Stephen R. CUDDY et al.

v.

Joseph SCHIAVONNE et al.

No. 88–375–Appeal.

Supreme Court of Rhode Island.

Feb. 1, 1990.

**1388**

Aram R. Schefrin, Aram R. Schefrin, Ltd., Providence, *for plaintiff*.

Leonard A. Kiernan, Thomas C. Plunkett, Kiernan & Plunkett, Providence, *for defendant*.

---

## OPINION

KELLEHER, Justice.

The plaintiff in this negligence action, Stephen R. Cuddy (Cuddy), filed suit in the Providence County Superior Court against the defendants, Joseph Schiavonne (Schiavonne) and Hertz Car Rental Agency (Hertz), for personal injuries allegedly resulting from an automobile collision in which Cuddy's car was struck from the rear by a Hertz rental car being driven by Schiavonne. After an eight-day jury trial, a verdict was returned in favor of Schiavonne and Hertz.[1] Shortly thereafter Cuddy's motion for a new trial was denied. Cuddy now appeals from the denial of that motion.

The facts of the collision are not complicated. On February 6, 1980, Cuddy was driving on a one-way section of Charles Street in Providence, Rhode Island. He turned onto a short road in order to turn again onto Ashburton Street, a one-way street heading in the opposite direction. He stopped as he approached the turn. Schiavonne, who was behind Cuddy, was making the same maneuver. He also came to a stop, but he then started forward, striking Cuddy's car in the rear. Apparently Schiavonne was looking for oncoming traffic to his right and mistakenly believed that Cuddy had already merged onto Ashburton Street. The record indicates that Cuddy's car sustained only a minor dent in the rear fender, and there was no visible damage to the Hertz rental car driven by Schiavonne. Police and a rescue squad were summoned, and Cuddy was taken by an ambulance to St. Joseph Hospital. After the examination in the emergency room was completed, Cuddy began to dress himself. As he was pulling on his pants, he fell to the floor. He was then admitted into the hospital and remained for eight days while being treated for a concussion.

In the months following his discharge from St. Joseph's, Cuddy consulted several

---

1. Cuddy's wife, Gail, had also joined in the suit filed in the Superior Court. Her claim was for loss of consortium. However, the court directed a verdict for defendants on that claim prior to the completion of the trial.

physicians for a multitude of physical ailments. He complained of recurring headaches, blackouts, and seizures. These blackouts apparently led to subsequent mishaps that, in turn, caused him further pain and injury.

When this matter came to trial, it was Cuddy's burden to present evidence that the injuries complained of were causally linked to the collision. Cuddy presented extensive medical testimony and evidence relating to his injuries. Despite the voluminous medical testimony and evidence, which was often confusing, the jury remained unconvinced and returned a verdict in favor of defendants. Cuddy then moved for a new trial. During the hearing of that motion the trial justice stated that different minds could have come to different conclusions based on the evidence presented. In his view, Cuddy had not carried his burden of proof, and the verdict had done "substantial justice between the parties." He then denied the motion.

Cuddy, in appealing that denial, raises several issues. He first argues that the trial justice erred in excluding many of the medical affidavits he had offered into evidence. He also contends that various exhibits offered into evidence by defense counsel were improperly admitted by the trial justice. Finally Cuddy asserts that the verdict was against the law and the evidence because, at a minimum, they had proven that plaintiff sustained a concussion and cervical strain as a result of the collision. We shall now address these issues.

■ First, Cuddy contends that the trial justice erred in excluding a medical affidavit of a deceased doctor. The trial justice excluded the records offered on the grounds that there were "obviously some gaps, and it seems to me that the defendant would be unduly prejudiced by my permitting [the] affidavit going in."

Rule 403 of the Rhode Island Rules of Evidence provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." As the record indicates the particular medical records offered were not complete. The affidavit

contained medical records dating back to June 24, 1980, but notes contained therein indicated a "prior visit." The unavailability of the records pertaining to that "prior visit" placed "an untenable burden * * * on defense counsel," according to the trial justice.

We have stated in *State v. Martini*, 460 A.2d 936, 938 (R.I.1983): "The question of whether to admit or exclude such [unduly prejudicial] evidence is within the sound discretion of the trial justice. * * * This court will not interfere with the trial justice's determination unless a clear abuse of discretion is apparent." *See State v. St. Pierre*, 118 R.I. 45, 371 A.2d 1048 (1977).

The gaps in the records relating to possible treatment before or immediately after the collision are sufficient grounds for the trial justice to find the affidavit to be unduly prejudicial to defendants. We therefore find no abuse of discretion in the trial justice's actions pertaining to this particular affidavit.

■ Second, Cuddy argues that the trial justice erred in excluding several other medical affidavits offered by Cuddy's counsel. Excluded were numerous exhibits, each comprising various records and charges from several hospitals, doctors, and medical-testing services. All dealt with treatment that had occurred after the collision. Each was excluded because it did not individually establish any causal connection between the injuries complained of and the collision. The trial justice stated that each failed "to meet the requisite requirement of medical affidavits in that the causal connection has not been made properly, and it is my understanding of the recent case of *Parrillo v. Woolworth* that the plaintiff cannot rely on other evidence to supply the missing link of causal connection in medical affidavits."

The case cited by the trial justice, *Parrillo v. F.W. Woolworth Co.*, 518 A.2d 354 (R.I.1986), reads, in pertinent part, "Expert testimony, if it is to have any evidentiary value, must state with some degree of certainty that a given state of affairs is the result of a given cause." *Id.* at 355–56.

"Each affidavit must satisfy the requirements for expert medical testimony on its own and may not rely on separate evidence to supply missing links." *Id.* at 356.

These exhibits were offered under G.L. 1956 (1985 Reenactment) § 9–19–27(a), as amended by P.L.1989, ch. 290, § 1,[2] which offers an alternative method of introducing medical evidence through the use of medical affidavits. We have, however, stated in *Parrillo,* "Although all litigants have the right to take advantage of the provisions of § 9–19–27, they run the risk of a failure of proof unless the medical picture is sufficiently clear and unambiguous to lend itself to this simplified manner of proof." 518 A.2d at 356. Each of the exhibits failed to meet the standard enunciated in *Parrillo,* and a perusal of the record quickly brings us to the conclusion that the medical picture in this case was neither clear nor unambiguous.

Therefore, we do not find any error in the actions of the trial justice excluding these numerous affidavits offered by Cuddy's counsel.

■ Third, Cuddy contends that the trial justice erred in admitting certain written evidence offered by Schiavonne and Hertz that was not authenticated and to which no proper foundation was offered. This evidence comprised four exhibits: two were hospital records and two were memos of Cuddy's former employer. Each of the four was introduced into the record by defense counsel during cross-examination. The plaintiff's counsel did not object to defendants' use of these documents.[3] Rule 103(a) of the Rhode Island Rules of Evidence states:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context."

A review of the record reveals that Cuddy's counsel did not, as required by Rule 103(a), make a timely objection to the use of these exhibits by defense counsel during cross-examination. Therefore, Cuddy waived any objection to their admission, and this court will not consider this argument on appeal. *See State v. Gordon,* 508 A.2d 1339, 1347 (R.I.1986).

■ Last, Cuddy argues that the trial justice erred in denying plaintiff's motion for a new trial. We have stated, in *Bader v. Alpine Ski Shop, Inc.,* 505 A.2d 1162, 1168 (R.I.1986):

"The standard by which a trial justice must consider a motion for a new trial is settled law in this jurisdiction. * * * The trial justice must sit as a seventh juror, independently reviewing the evidence and assessing the credibility of witnesses. In his decision, the trial justice must set forth the evidence he relies on and we will not disturb his decision absent the record revealing that he overlooked or misconceived relevant evidence on a material issue or was otherwise clearly wrong."

Furthermore, in considering such a motion, a trial justice must approve a verdict should he find that "the evidence is balanced or that reasonable minds could differ." *Beauchemin v. Sweeten,* 471 A.2d 624, 626 (R.I.1984).

2. General Laws 1956 (1985 Reenactment) § 9–19–27(a), as amended by P.L.1989, ch. 290, § 1, states in pertinent part,
   "In any proceeding commenced in any court * * * an itemized bill and reports * * * including hospital medical records, relating to medical * * * hospital services * * * rendered to * * * a person injured, and/or any report of any examination of said injured person, including, but not limited to, hospital medical records * * * shall be admissible as

evidence of * * * the necessity of such services or treatment, the diagnosis * * * the prognosis * * * the opinion of such physician * * * as to proximate cause of the condition so diagnosed."

3. The plaintiff's counsel did object to the use of a fifth document by defense counsel. This document was a letter, pertaining to Cuddy, sent from Cuddy's former employer to one of its branch offices. The objection was overruled.

The trial justice, in denying the motion, highlighted the confusion evident in the extensive medical testimony and evidence and then stated: "I view it that there were issues that different minds could come to different conclusions on. * * * The burden is on the plaintiff, and I find that the plaintiff did not carry that burden based upon the very few comments I made concerning the expert testimony and the requisite causal connection that had to be made."

We cannot find that the trial justice overlooked or misconceived relevant evidence on a material issue or was otherwise clearly wrong. He commented upon the unclear and conflicting nature of the medical testimony and concluded that Cuddy had not carried his burden.

█ Cuddy nevertheless argues that the verdict was against the law and evidence because uncontradicted evidence existed of at least a concussion and cervical strain. The jury, however, was not obligated to believe that evidence. As this court stated in *Capezza v. Hertz Equipment Rental Corp.*, 118 R.I. 1, 8, 371 A.2d 269, 273 (1977), "The fact that plaintiffs' testimony is uncontradicted by defendant's direct testimony, however, does not compel acceptance of plaintiffs' positive testimony if that testimony contains inherent improbabilities and contradictions which alone or in connection with other circumstances in evidence affect its credibility."

As we have already indicated, the medical testimony and evidence was often ambiguous and inconclusive. For example, the record indicates there was evidence presented that neurological tests performed at various points in time following the collision all yielded normal results. Therefore, it is not unlikely that the jurors felt the testimony contained "inherent improbabilities and contradictions affect[ing] its credibility." Accordingly they were not obligated to accept Cuddy's evidence as true.

It is the view of this court that the trial justice performed his duty in an exemplary fashion. We therefore find no error in his denial of Cuddy's motion for a new trial.

For the reasons stated, the plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed.