**In re VANNARITH D.**

**No. 97–195–Appeal.**

Supreme Court of Rhode Island.

May 17, 1999.

Virginia McGinn, Aaron L. Weisman, Shilpa Naik, Andrea J. Mendes, Providence, for Plaintiff.

Catherine A. Gibran, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on appeal from a Family Court adjudication of delinquency stemming from charges of possession of heroin with intent to deliver in violation of G.L.1956 § 21–28–4.01(C)(1)(a), and removal of a serial number on a firearm in violation of G.L.1956 § 11–47–24.[1] Upon a determination of delinquency, Vannarith D. (Vannarith) was

---

1. Vannarith D. was also charged with a third count of conspiracy to violate the Rhode Island Uniform Controlled Substances Act, which was dismissed at the close of the evidence when the trial justice determined that there was "no evidence presented to [t]he [c]ourt of any conspiracy."

sentenced to one year at the Rhode Island Training School, with an additional six-months suspended sentence. On appeal, Vannarith avers that the trial justice was in error in: (1) finding that the evidence was sufficient to sustain an adjudication of delinquency beyond a reasonable doubt; and (2) refusing to permit more extensive cross-examination of a police witness with respect to his exact surveillance location. After a careful review of the evidence, the applicable law, and the arguments of the parties, we conclude that the Family Court justice committed no error in his finding of delinquency, nor in the manner in which he limited the scope of cross-examination with respect to the officer's surveillance location.

## Facts and Procedural History

On November 14, 1996, certain members of the Providence Police Department, the Federal Bureau of Investigation, and the Special Investigation Bureau (SIB) were conducting a street operation of a known drug house located on Althea Street in the Cranston Street section of Providence. The sole witness presented by the prosecution was Detective Gregory Daniels (Daniels) of the Providence Police Department. Daniels, who was personally involved in the investigation and surveillance of Althea Street, indicated that this operation was conducted in a similar manner to the typical street operations. Daniels testified that from a fixed but undisclosed surveillance position, he observed what appeared to be a series of drug transactions taking place out of the Althea Street house. As these illicit transactions were made, the "customers" were followed out of the area as far from the surveillance location as possible and frisked for possession of illegal substances. If during the frisk the individual "customer" was found to be in possession of narcotics, the individual was placed under arrest.

The following circumstances triggered the search and subsequent arrest of Vannarith at a nearby Linwood Avenue address. On several occasions, an undisclosed informant provided Daniels with information that large quantities of heroin were being stored at and sold from 131 Linwood Avenue. Also, during the surveillance of the house located on Althea Street, the police officer observed that "action was slowing down * * * which meant they ran out of drugs." Soon thereafter, individuals were observed leaving the Althea Street location and proceeding directly to the Linwood Avenue address. Within minutes, the individuals would leave Linwood and return to Althea where "business would then start up again." After observing this activity, Daniels suspected that occupants of the Linwood house could be supplying residents of the Althea house with narcotics. Relying on the information he had received from the unidentified informant concerning drug activity at the Linwood location, and his observations during the street operation, officers secured a search warrant for both the third floor apartment at 131 Linwood Avenue and the Althea Street address. Simultaneous searches were conducted. Pursuant to the warrant, Daniels, as well as approximately seven other uniformed officers, responded to 131 Linwood Avenue. Just as Daniels was to force open the door of the third-floor unit with the aid of entry equipment, a young female came to the door and the officers proceeded into the apartment. Daniels immediately observed four young males inside what appeared to be their bedroom.[2] Three of the individuals were sitting on one bed, while another was sitting separately playing a video game. Daniels searched the bedroom and under a mattress, uncovered contraband which included a Raven .25–

---

2. Daniels opined that this bedroom, containing three beds, appeared to be occupied by young males. In support of his opinion, he offered the fact that there were undergar-ments, toiletries, hats, jackets, and vests in the room that appeared to be of the type used by young males.

**688**

caliber pistol with an obliterated serial number, and 300 glassine packs of suspected heroin in fifty-pack increments.[3] In addition, upon exiting the bedroom, Daniels discovered a white envelope containing $400 in U.S. currency on the floor at the threshold of the bedroom door. After seizing these items, Daniels questioned the four males and learned that three of the four subjects resided in the third-floor apartment of 131 Linwood Avenue. The officers then placed the subjects in the rear of the police van and transported them to the SIB office where they were given their Miranda rights. Daniels also testified that at some point prior to transporting the suspects to the SIB office, Vannarith made a statement to the effect that the tenants living on the second floor of the apartment building were responsible for the drugs.

At trial, defense counsel attempted to cross-examine Daniels with respect to the precise location of the surveillance. The trial justice determined that Daniels was not required to reveal his exact surveillance location, however, he did allow cross-examination with respect to visual obstructions such as trees or telephone poles. At the close of the evidence, Vannarith made an oral motion to dismiss, arguing that the state failed to meet its burden of proof beyond a reasonable doubt. This motion was denied as it pertained to the unlawful possession of a controlled substance with intent to deliver, and removal or obliteration of a serial number on a firearm. In denying the defendant's motion to dismiss, the trial justice found that the defendant lived in the apartment at 131 Linwood Avenue where the contraband was found, and that the drugs were located in Vannarith's bedroom under the bed on which Vannarith was sitting at the time the search warrant was executed. The trial justice determined that these facts were sufficient to establish possession of the heroin with intent to deliver. These same

facts and circumstances were relied upon to sustain a finding that Vannarith was in possession of the firearm. The trial justice subsequently sentenced Vannarith to the Rhode Island Training School for a period of eighteen months with one year to serve, six months suspended, and probation until his eighteenth birthday. Vannarith raises two issues on appeal: first, that there was insufficient evidence produced at trial to establish constructive possession of the heroin or the firearm; and second, that defendant's constitutional rights were violated due to the limited scope of the cross-examination of the police officer regarding his surveillance location.

**Standard of Review**

In a trial heard without the intervention of a jury, the appropriate motion to challenge the legal sufficiency of the state's trial evidence is by a motion to dismiss. *State v. McKone,* 673 A.2d 1068, 1072 (R.I.1996). When ruling on a motion to dismiss a case tried without the intervention of a jury, the trial justice serves as a factfinder and is required to weigh and evaluate the evidence, pass upon the credibility of the witnesses, and engage in drawing inferences in favor or against either party, not only the nonmoving party. *Id.* at 1072–73. If after doing so, the trial justice determines that the evidence is sufficient to support a finding of guilt beyond a reasonable doubt, he or she will deny the motion to dismiss and enter a judgment of conviction. If, however, the trial justice determines that the evidence is insufficient to support a finding of guilt beyond a reasonable doubt, he or she will grant the motion and dismiss the case. *Id.* at 1073. Moreover, "[t]he findings of fact of a trial justice sitting without a jury are accorded great deference and will not be disturbed unless it is demonstrated that he or she misconceived or overlooked material evi-

---

**3.** Trial testimony revealed that the street term for narcotics packed in this manner is a "New York brown," consisting of fifty packets of heroin bundled together apparently ready for subsequent sale.

dence or was otherwise clearly wrong." *Id.* at 1075 (quoting *State v. Shatney*, 572 A.2d 872, 876 (R.I.1990)). "The same reasoning applies with equal force to inferences drawn by a trial justice sitting as a trier of fact." *In re Randy B.*, 486 A.2d 1071, 1073 (R.I.1985); *Walton v. Baird*, 433 A.2d 963, 964 (R.I.1981). Consequently, we are required to review the adjudication of delinquency with great deference given the factual determinations of the trial justice. Accordingly and in light of this standard, we affirm the findings of the trial justice and deny Vannarith's appeal.

### Sufficiency of Evidence

 The central issue before us is Vannarith's challenge to the sufficiency of evidence establishing possession of the contraband. Under Rhode Island law, a defendant can be considered to be in constructive possession of a narcotic, notwithstanding the fact that the contraband was not in his or her immediate physical possession. *See State v. Hernandez*, 641 A.2d 62, 70 (R.I.1994); *see also In re Caldarone*, 115 R.I. 316, 326, 345 A.2d 871, 876 (R.I. 1975). There are two elements that the state must satisfy before a defendant is considered to be in constructive possession of an illegal substance: (1) that the defendant had knowledge of the presence of the item; and (2) that the defendant intended to exercise control of the item. *See Hernandez*, 641 A.2d at 70; *see also State v. Mercado*, 635 A.2d 260, 262 (R.I.1993). In addition, "[p]roof of knowledge of the item and the defendant's intent to exercise control over the item can be inferred from a totality of the circumstances." *Hernandez*, 641 A.2d at 70. "Constructive possession may be exclusive or joint," and the fact that another person may have equal access to the item is not sufficient to negate constructive possession. *Id.*; *see also Mercado*, 635 A.2d at 263.

The trial justice found as a fact that: (1) Vannarith lived at 131 Linwood Avenue; (2) the drugs and pistol were found in the bed on which Vannarith was sitting; (3) there was evidence of apparel located in the bedroom that is consistent with a teenage boy occupying the room; and (4) by alleging that the contraband belonged to occupants of the second floor apartment, Vannarith revealed he had knowledge of its presence. After considering all of these facts, the trial justice determined that the state had proved Vannarith's guilt beyond a reasonable doubt. It is clear that the trial justice recognized mere presence is not enough to establish constructive possession of contraband, yet constructive possession can be inferred from the totality of the circumstances. *State v. King*, 693 A.2d 658, 664 (R.I.1997) (where this Court determined that one of the factors among the totality of the circumstances which established constructive possession was the fact that the defendant was lying on the bed under which police uncovered ten vials of cocaine); *see also In re Caldarone*, 115 R.I. at 326, 345 A.2d at 876. After carefully considering the evidence and determining that the trial justice neither misconceived nor overlooked any material evidence, and was not otherwise clearly wrong, we deny Vannarith's appeal challenging the sufficiency of evidence.

### Cross-examination

 The remaining issue concerns the trial justice's ruling which essentially prevented Vannarith from obtaining the precise location where Daniels conducted the surveillance. It is axiomatic that the admissibility of evidence is placed within the sound discretion of the trial justice whose determination of admissibility will not be disturbed on review "unless a clear abuse of that discretion is apparent." *See State ex. rel. Town of Middletown v. Anthony*, 713 A.2d 207, 210 (R.I.1998) (quoting *Soares v. Nationwide Mutual Fire Insurance Co.*, 692 A.2d 701, 702 (R.I.1997) (mem.)); *see also Cuddy v. Schiavonne*, 568 A.2d 1387, 1389 (R.I.1990); *State v. Martini*, 460 A.2d 936, 938 (R.I.1983). We find it most significant that this appeal is not from the denial of a motion to suppress

evidence obtained as a result of the search warrant. We agree with the state that "[i]ndeed, the surveillance position and subsequent search warrant were not significant issues at trial because the trial justice had denied defendant's motion to suppress the search warrant during a pretrial motion." Accordingly, we find this issue on appeal, amounting to vague assertions of a violation of Vannarith's Sixth Amendment Right to Confrontation, to be without merit.

In conclusion, we are satisfied that the issue of adequate cross-examination relative to the surveillance location is not material to the findings necessary to support a conviction in this case. Moreover, we find it unnecessary to reach the question of a surveillance privilege, given that the defendant has not challenged the sufficiency of the probable cause supporting the issuance of the search warrant. Consequently, the defendant's appeal is denied and dismissed. The adjudication of delinquency of the Family Court is affirmed, and the papers in this case are remanded to that court.