**STATE**

**v.**

**Ismaila ABDULLAH.**

**No. 98–316–C.A.**

Supreme Court of Rhode Island.

June 15, 1999.

Jane McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on May 21, 1999, pursuant to an order directing the parties to show cause why the defendant's appeal should not be summarily decided. The defendant, Ismaïla Abdullah, challenges a trial justice's determination of the existence of reasonable suspicion to warrant an investigatory stop. After reviewing the memoranda submitted by the parties and hearing the oral arguments of counsel, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided at this time.

On December 31, 1994, at approximately 2 a.m., two police officers were driving in a marked cruiser near Capital Street in Pawtucket, Rhode Island. Before their shift began, the officers were informed at roll call of illegal drug activity occurring in the area of 61–63 Capital Street. While driving along that roadway, the officers observed two men walking down the driveway of 61–63 Capital Street. The policeman driving the cruiser, Officer Brown, turned the vehicle toward the curb in or-

der to pull alongside the two men. Based on the information provided at roll call, Officer Brown intended to ask them what they were doing in the area.

As the officers pulled up, Brown's partner, Officer Dolan, noticed one of the men drop what appeared to be two glassine bags of cocaine on the ground. Both officers left the cruiser. Officer Dolan then arrested the individual he observed drop the bags of narcotics. The other male, later identified as defendant, walked away from his companion at a brisk pace. Officer Brown ordered defendant to stop. The defendant complied with Officer Brown's command. In addition to stopping, however, defendant also dropped a bag on the ground. Believing the discarded bag contained cocaine, Officer Brown placed defendant under arrest. A subsequent lab test confirmed that the contents of the bag were cocaine.

The state charged defendant with possession of a controlled substance. Before trial, defendant moved to suppress the evidence on the ground that the "seizure [of defendant] occurred following and as the result of an unlawful arrest." The trial justice denied the motion and a jury found defendant guilty of the charge. The trial justice sentenced defendant to three-years imprisonment, six months to serve, the balance suspended with probation.

On appeal, defendant contends that the trial justice erred in denying his motion to suppress the evidence. Specifically, defendant argues that since the police did not have reasonable suspicion to stop him, the fruits of that seizure are inadmissible. Moreover, defendant ascribes error to the trial justice's determination that defendant abandoned the bag of cocaine by dropping it to the ground prior to his detention. We disagree with defendant's contentions and for the reasons that follow, affirm the ruling of the trial justice.

▪ When reviewing an alleged violation of a defendant's constitutional rights, this Court "must make an independent examination of the record to determine if [the defendant's] rights have been violated." *In re John N.*, 463 A.2d 174, 176 (R.I.1983). We review a trial justice's determination of the existence or nonexistence of probable cause or reasonable suspicion on a *de novo* basis. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996); *State v. Rios*, 702 A.2d 889, 889–90 (R.I. 1997); *State v. Campbell*, 691 A.2d 564, 569 (R.I.1997).

On numerous occasions this Court has addressed Fourth Amendment search and seizure issues, noting that " 'whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that [person]' within the meaning of the Fourth Amendment." *State v. Belcourt*, 425 A.2d 1224, 1227 (R.I.1981) (quoting in part *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968)); *see also State v. Bennett*, 430 A.2d 424, 427 (R.I.1981). Following the evolving stop and frisk analysis of the United States Supreme Court, we have held that "a police officer may conduct an investigatory stop, provided [the officer] has a reasonable suspicion based on specific and articulable facts that the person detained is engaged in criminal activity." *State v. Halstead*, 414 A.2d 1138, 1147 (R.I.1980); *see also Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357, 362 (1979) (police officer's reasonable suspicion of criminal activity must arise from specific and articulable facts and the reasonable inferences that can be drawn from them); *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–68 (1979) (same). An investigatory stop is defined as "[a] brief stop of a suspicious individual, in order to determine his [or her] identity or to maintain the status quo momentarily while obtaining more information, [such a stop] may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972). We have held that such a stop must be available to law

enforcement officers "as an intermediate response when an individual's conduct, though suspicious, does not * * *" rise to the level of probable cause to arrest. *Halstead*, 414 A.2d at 1147.

Numerous factors exist which may contribute to a finding of reasonable suspicion of criminal activity. "[F]actors that alone do not create a reasonable suspicion may, when combined, warrant a reasonable suspicion of criminal activity." *Id.* at 1148. Indeed, a series of noncriminal acts will often serve as the foundation for reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 9–10, 109 S.Ct. 1581, 1586–87, 104 L.Ed.2d 1, 11–12 (1989). "In making a determination of [reasonable suspicion] the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attached to particular types of noncriminal acts." *Id.* at 10, 109 S.Ct. at 1587, 104 L.Ed.2d at 12 (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527, 552 n. 13 (1983)). Such "otherwise innocent acts, when observed as a whole by a trained and experienced law enforcement officer aware of other pertinent information, allow that officer to 'draw inferences and make deductions inferences and deductions that might well elude an untrained person.'" *State v. Ortiz*, 609 A.2d 921, 927 (R.I.1992) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)). Some of the factors that may contribute to a reasonable suspicion of criminal activity include the location in which the conduct occurred, the time at which the incident occurred, the suspicious conduct or unusual appearance of the suspect, and the personal knowledge and experience of the police officer. *Halstead*, 414 A.2d at 1148.

Turning to the instant case, defendant contends the police did not have reasonable suspicion lawfully to stop and seize him. In support of his contention, defendant, relying on *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), argues that an individual's presence in an area with a high incidence of drug trafficking does not justify a stop on grounds of reasonable suspicion. In *Brown*, the Supreme Court found that no reasonable suspicion existed where a police officer, without any claim of specific misconduct, stopped a suspect in an alley with a high incidence of drug traffic because the officer believed that the "situation * * * 'looked suspicious.'" *Id.* at 52, 99 S.Ct. at 2641, 61 L.Ed.2d at 362. The Court stated that the fact that the suspect "was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that [the suspect] was engaged in criminal conduct." *Id.* at 52, 99 S.Ct. at 2641, 61 L.Ed.2d at 362–63. The *Brown* Court, however, distinguished the mere hunch or blanket suspicion employed by that officer "from the observations of a trained, experienced police officer who is able to perceive and articulate meaning in a given conduct which would be wholly innocent to the untrained observer." *Id.* at 52 n. 2, 99 S.Ct. at 2641 n. 2, 61 L.Ed.2d at 362 n. 2.

In the case before us, several specific and articulable facts existed that prompted the officer to stop defendant. At roll call, both officers were informed of drug activity occurring at 61–63 Capital Street in Pawtucket. The officers observed defendant and another person leaving this specific location, not a general area as in *Brown*. The officers observed defendant and his companion in this specific area at the early hour of 2 a.m. The officer driving the cruiser turned near defendant and his companion simply to ask what they were doing in the area. Before the officer could ask that question, however, defendant's companion dropped two bags of cocaine. As one officer arrested his companion, defendant quickly walked away. As a result, the other officer ordered defendant to stop. In light of these facts, especially when viewed from the perspective of a trained and experienced law enforcement officer, it is clear that the officer possessed reasonable suspicion of

criminal activity. Therefore, the state's interest in briefly detaining defendant outweighed defendant's right to be free from intrusions on his liberty that accompanied the investigatory stop.

█ The defendant argues that his lack of furtive behavior and mere proximity to an individual who dropped two bags of cocaine is not sufficient to justify the stop. In support of his argument, defendant cites our decision in *In re John N.*, 463 A.2d 174 (R.I.1983). In that case, we applied a probable cause standard to a search and seizure of a person, holding that "[t]he mere fact that a person is associating with, or in the presence of, others who are suspected of criminal activity does not, by itself, establish probable cause to arrest or search that person." *Id.* at 178. The defendant, however, not only misinterprets our holding in *In re John N.*, but also misconceives the distinction between probable cause and reasonable suspicion.[1] In this case, we focus solely on whether the officer had reasonable suspicion to stop defendant, not whether the officer had probable cause to search defendant or effect an arrest.

In his final argument, defendant directs our attention to *State v. Bennett*, 430 A.2d 424 (R.I.1981), arguing that the unlawful action of the police in seizing defendant caused him to drop the bag. The defendant contends that the dropping of the bag was not voluntary but rather forced by the actions of the officers. Therefore, defendant argues, the trial justice erroneously admitted the bag into evidence.

█ The defendant is correct in his assertion that voluntary abandonment exists only where law enforcement officers commit no initial improper or unlawful act which taints the subsequent seizure. *See id.* at 428. Unlike *Bennett*, though, the officers in the instant case did not procure the evidence based on an illegal action. As previously discussed, the officers had reasonable suspicion to stop defendant. The parameters of this stop would have allowed detention to "determine his identity or to maintain the status quo momentarily while obtaining more information * * *." *Adams*, 407 U.S. at 146, 92 S.Ct. at 1923, 32 L.Ed.2d at 617. However, before any actions were taken toward defendant other than ordering him to stop, defendant dropped the bag, thereby abandoning it. After observing defendant drop the bag of cocaine, the officer placed him under arrest. Under these circumstances, the trial justice did not err in admitting the evidence.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed.

---

1. Typically, when law enforcement officers seek to effect an arrest, the detention is reasonable only "when the authorities can demonstrate a quantum of knowledge known as probable cause [which] * * * exists where a reasonable [person] of caution would believe a suspect had committed or is committing an offense." *State v. Bjerke*, 697 A.2d 1069, 1071 (R.I.1997). On the other hand, "when [law enforcement officials] only briefly detain an individual * * * this lesser intrusion is generally reasonable in situations in which authorities can demonstrate a lesser quantum of knowledge known as reasonable suspicion. * * * Reasonable suspicion means the detaining authority can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968)).

In this case, we have already determined that the officer possessed reasonable suspicion of criminal activity and, therefore, properly conducted an investigatory stop. Although not explicitly raised by defendant, the question of whether the officer had probable cause to arrest defendant is a simple one. Under the unique facts of this case, probable cause to search or effect an arrest is certainly triggered when an officer, after conducting a proper investigatory stop, observes a defendant discard a bag of narcotics.