**Supreme Court**

No. 2011-153-C.A.

(W2/10-260A)

State                          :

v.                          :

Gary Santos.                          :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Gary Santos. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.** Gary Santos appeals from a judgment of conviction for carrying a firearm in a motor vehicle without a license in violation of G.L. 1956 § 11-47-8(a).[1] Santos' principal argument on appeal is that the trial justice erred when he denied his motion to suppress tangible evidence, to wit, a .44-caliber revolver and eleven bullets. Santos argues that his motion to suppress should have been granted because the revolver and bullets were seized after a police officer conducted what he alleges was an illegal search in violation of article 1, sections 6 and 10 of the Rhode Island Constitution and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Santos also argues that the trial justice erred in denying his motion for a judgment of acquittal, which he alleges was based on insufficient evidence. This case came before this Court, sitting at Exeter West Greenwich High School, on April 4, 2013, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions, and after reviewing the record, we conclude that cause has not been shown and that

---

[1] General Laws 1956 § 11-47-8(a) provides, in pertinent part, that "[n]o person shall, without a license or permit * * * carry a pistol or revolver in any vehicle or conveyance or on or about his or her person whether visible or concealed * * *."

- 1 -

this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I
## Facts and Travel

On April 24, 2010, at approximately 8:30 p.m., Officer Bethany Dolock of the South Kingstown Police Department was on patrol. While she was driving northbound on Route 1 in South Kingstown, the police officer saw a vehicle that was traveling about twenty miles per hour over the speed limit. She activated her overhead lights and the driver pulled over. Officer Dolock pulled up behind the car, exited her marked cruiser, and walked toward the car. As she did, she noticed that there was a garment bag hanging from the rear ceiling on the driver's side that was blocking her view of the back seat. When she approached the driver's side and was first able to look into the vehicle, she saw several loose bullets in an ashtray to the left-hand side of the steering wheel. She promptly asked the driver if he had a weapon; he responded that he did not. During this exchange, Officer Dolock detected a strong odor of alcohol emanating from the vehicle, and she observed that the driver was looking around the car and intentionally looking away from her. She described this as unusual behavior for a motorist during a traffic stop.

Officer Dolock testified that she repeated her question, asking the driver again if he had a weapon, and the driver again responded that he did not. The driver then turned his body towards the passenger side of the vehicle, and Officer Dolock could no longer see his hands. Fearing for her own safety, she partially withdrew her service weapon from its holster and directed the driver, who was later identified as Santos, to "put his hands where [she] could see them." Santos complied and then got out of the vehicle at the officer's direction. As he got out of the car, Officer Dolock could smell a strong odor of alcohol coming from Santos' breath, and she noticed that he had bloodshot, watery eyes and a slight sway in his stance. Officer Dolock, who was

- 2 -

alone with Santos during this time, then guided him to the rear of his car and initiated a cursory pat-down of his outer clothing for a weapon. That cursory examination revealed a small pocket knife in one of his pockets. She asked Santos if he had any more weapons, and he denied that there were any.[2] Officer Dolock testified that she placed Santos in handcuffs and explicitly informed him that he was not under arrest, but that she was handcuffing him "for [her] safety and his." At that time, Trooper Marc Lidsky of the Rhode Island State Police passed by the scene as he was on his way home; as was his usual practice, he stopped to render assistance.

Officer Dolock tried to inquire of Santos further, but he was uncooperative, responding to her questions by saying that "he would only speak to the trooper because he was in charge." After Santos refused to answer any questions, Officer Dolock led him to her cruiser, at which time two South Kingstown officers arrived as backup.[3] As soon as she secured Santos in the rear of her cruiser, Officer Dolock searched Santos' vehicle for weapons while Trooper Lidsky monitored traffic and kept an eye on Santos. The first area of the car that she searched was the front passenger's side of the vehicle—the area where she had lost sight of Santos' hands. She observed several more loose bullets and what appeared to her to be the butt of a gun. When she tilted the passenger's seat forward, she discovered a loaded revolver on the floor.

Officer Dolock returned to her cruiser and asked Santos if he had any documentation as to who owned the revolver. Santos did not respond. She then escorted him out of her cruiser with the intention of administering the standard field sobriety tests. After he refused to submit to the tests, she arrested him for suspicion of driving under the influence of intoxicants. She then

---

[2] Office Dolock testified at trial that Santos denied that he had a weapon when she asked him, but her police report indicates that he "appeared hesitant in his answer as he looked in his vehicle."

[3] Officer Dolock had called for backup from the South Kingstown Police Department on a radio on her lapel when she first observed the bullets in the ashtray. Trooper Lidsky arrived on the scene before additional South Kingstown officers arrived.

placed him back in her cruiser and transported him to the South Kingstown police station for processing.[4]

As a result of this traffic stop, Santos was charged with carrying a weapon while under the influence of intoxicating liquor or narcotic drugs in violation of § 11-47-52 (count 1), carrying a firearm in a motor vehicle without a license in violation of § 11-47-8(a) (count 2), and unlawfully operating a motor vehicle while under the influence of intoxicating liquor in violation of G.L. 1956 § 31-27-2(d)(1) (count 3).

Before his trial began, Santos filed a motion to suppress the revolver and the bullets, arguing that they were the fruits of an illegal search. On November 16, 2010, the trial justice heard arguments on the motion, which the trial justice denied the next day. Thereafter, a two-day jury trial commenced. At the close of the state's case, Santos moved for a judgment of acquittal on all counts, based on Rule 29 of the Superior Court Rules of Criminal Procedure, and he renewed his motion to suppress.[5] The trial justice granted the Rule 29 motion for a judgment of acquittal as to count 1 and count 3, but he denied the motion as to count 2.

The trial justice also denied the renewed motion to suppress. In a written decision denying the renewed motion to suppress, the trial justice first concluded that the search of the vehicle could not be justified by the "search incident to arrest" doctrine under Arizona v. Gant, 556 U.S. 332, 343 (2009), which instructs that an officer may "search a vehicle incident to a

---

[4] Officer Andrew Scott Hopewood of the South Kingstown Police Department testified that he brought a camera to the scene, secured the weapon, and transported the revolver and ammunition back to the police station.

[5] Rule 29(a)(1) of the Superior Court Rules of Criminal Procedure provides, in pertinent part:
> "[t]he court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of such offense or offenses."

recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." The trial justice reasoned that Santos was "placed in handcuffs, secured in the back seat of a patrol car, and at least one back-up officer had arrived at the scene to assist" and "[t]herefore, [Santos] was neither free nor mobile and was not within reaching distance of the passenger compartment of the vehicle." However, the trial justice then reasoned that "there was sufficient probable cause to search the vehicle for hidden weapons, given the time of night, the discovery of bullets in plain view, the furtive movement by [Santos], and his purposeful failure to look directly at Officer Dolock." The trial justice also concluded that, "assuming arguendo that Officer Dolock did not have probable cause to search [Santos'] vehicle, the revolver which was seized [wa]s admissible because it would have been inevitably discovered during an inventory search."

On November 18, 2010, a jury entered a verdict of guilty on count 2. On January 21, 2011, Santos was sentenced to a term of five years imprisonment, with one year to serve and the remainder suspended, with probation. Santos timely filed a notice of appeal, challenging the denial of his motion to suppress.

## II
## Standard of Review

In assessing a decision denying a motion to suppress, "[t]his Court accords deference to a trial justice's findings of fact * * * and refrains from overturning such findings unless they are clearly erroneous." State v. Goulet, 21 A.3d 302, 311 (R.I. 2011). However, "[w]hen reviewing an alleged violation of a defendant's constitutional rights, this Court 'must make an independent examination of the record to determine if [the defendant's] rights have been violated.'" Id. (quoting State v. Abdullah, 730 A.2d 1074, 1076 (R.I. 1999)). In undertaking this independent examination, "we view the evidence in the record in the light most favorable to the state." Id.

We also "review a trial justice's determination of the existence or nonexistence of probable cause or reasonable suspicion on a <u>de novo</u> basis." <u>Id.</u> (quoting <u>Abdullah</u>, 730 A.2d at 1076).

### III
### Analysis

### A
### Constitutionality of the Search

Santos argues that the search of his vehicle was unconstitutional because the circumstances that were known to Officer Dolock at the time of the traffic stop were insufficient to support either a finding of reasonable suspicion to support a warrantless search under the protective-search doctrine, or a finding of probable cause to support a warrantless search under the "automobile exception." Santos also contends that the trial justice erred in concluding that the revolver would have been inevitably discovered during an inventory search, because there was no evidence in the record regarding the South Kingstown Police Department's procedure as it related to an inventory search of seized or impounded vehicles. Finally, in response to the state's argument, Santos maintains that the trial justice was correct in finding that the search incident to arrest doctrine did not apply because he was secured in the police cruiser and in handcuffs at the time of Officer Dolock's search. Conversely, the state urges us to uphold the challenged police conduct as a lawful protective search for weapons; the state does not support the rationale of the trial justice, which was based on a finding of probable cause. In the alternative, the state maintains that the revolver would have been inevitably discovered as the result of a search incident to arrest.

Indeed, it is well settled that this Court can affirm a decision on different grounds from those relied upon by the trial justice. <u>See</u> <u>State v. Quaweay</u>, 799 A.2d 1016, 1018 (R.I. 2002). In this case, the trial justice's analysis concluded that based on the automobile exception, a

protective search was warranted. However, the automobile exception and the protective-search doctrine are two separate exceptions that support warrantless searches. The automobile exception allows police officers to search automobiles and containers therein without a warrant when they have probable cause to believe that they hold contraband or evidence of a crime, while the protective-search doctrine allows for a limited search of an automobile without a warrant when he or she has a reasonable belief that the suspect is dangerous and may gain immediate control of weapons. See State v. Milette, 727 A.2d 1236, 1239-40 (R.I. 1999) (discussing the protective-search doctrine); State v. Werner, 615 A.2d 1010, 1013 (R.I. 1992) (discussing the automobile exception).

Here, the trial justice provided a sound analysis for a protective search, delineating the specific and articulable facts to support an objective belief that a firearm could be found in Santos' vehicle. However, he erred in stating that these facts had to rise to the level of establishing probable cause, when the protective-search doctrine only requires reasonable belief. He also referred to the automobile exception as the theory pursuant to which he was analyzing this case, when he actually applied an analysis for a protective search. Because we have the authority to affirm on grounds other than those relied on by a trial justice, and because a protective search is permitted under a standard that is less rigorous than probable cause, we proceed to consider whether Officer Dolock's search was a constitutionally permissive protective search.

In evaluating the constitutionality of a search, it is well established that the totality of the circumstances must be taken into account. State v. Foster, 842 A.2d 1047, 1051 (R.I. 2004) (enumerating factors to support a finding of reasonable suspicion, including location, time, suspicious conduct, unusual appearance of suspect, and personal knowledge and experience of

the officer). We have held that a police officer may order the driver of a lawfully stopped motor vehicle to get out of his vehicle for the purposes of verifying identification and, if circumstances warrant, conducting a brief pat-down of the suspect. State v. Aubin, 622 A.2d 444, 445 (R.I. 1993); State v. Collodo, 661 A.2d 62, 64-65 (R.I. 1995) (ordering occupants of a lawfully stopped vehicle out of car and patting down outer garments to determine if occupants are armed is constitutionally permissible). Additionally, consistent with the Fourth Amendment, an officer may conduct a limited search of an automobile for weapons when the police officer "has an articulable suspicion to believe that the suspect may be armed and dangerous" and that the suspect has the "present ability to obtain a weapon." Milette, 727 A.2d at 1239, 1240; see Michigan v. Long, 463 U.S. 1032, 1049 (1983) (expanding protective searches to motor vehicles when "the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons" (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968))). As we have stated previously, "the very great risk police officers encounter during routine traffic stops," coupled with "society's great interest in ensuring the safety of [the] police during such procedures," clearly justifies a search of the passenger compartment, albeit limited to those areas where a weapon may be hidden. State v. Tavarez, 572 A.2d 276, 278 (R.I. 1990); see also Long, 463 U.S. at 1048.

The circumstances in this case, including Officer Dolock's observation of loose bullets—combined with Santos' furtive movements, intentional avoidance of eye contact, and positioning of his hands in such a way that the officer could not see them—as well as the fact that it was approximately 8:30 p.m., Officer Dolock was alone, and Officer Dolock discovered a knife during a cursory pat-down of Santos even though Santos told her that he did not have any

weapons, taken together, convince us that Officer Dolock was reasonable in her belief that Santos might be armed and dangerous. See, e.g., Milette, 727 A.2d at 1240 (protective search of vehicle was constitutional when occupants were gesturing towards floor and handed license and registration before police requested it); Tavarez, 572 A.2d at 278 (furtive movement in response to an approaching police officer heightens apprehension of officer with regard to the action of the motorist and may give rise to reasonable suspicion that the suspect secreted something or gathered something); State v. Garcia Garcia, 821 P.2d 191, 192-93 (Ariz. Ct. App. 1991) (collecting cases holding that the presence of a bullet or bullets could reasonably indicate the presence of a gun, justifying a search of the passenger compartment to ensure the officer's safety under Long). Accordingly, based on our review of the record, it is our firm opinion that Officer Dolock possessed specific and articulable facts that justified her decision to pat Santos down for weapons, as well as to conduct a limited sweep of Santos' vehicle for weapons. See Collodo, 661 A.2d at 65 (no constitutional rights violated by asking the defendant to leave the vehicle or by conducting a pat-down when there were specific and articulable facts warranting such action).

Santos argues that, even if there was a reasonable belief that he was armed and dangerous, there could be no reasonable belief that he had a present ability to obtain a weapon because he was handcuffed and secured in Officer Dolock's cruiser. However, in Long, the United States Supreme Court recognized that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers": a suspect could break away from the officer and retrieve a weapon in the vehicle or may be permitted to re-enter the vehicle before the investigation is over and gain access to a weapon. Long, 463 U.S. at 1047, 1051-52; see Terry, 392 U.S. at 24, 30 (explaining that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be

- 9 -

afoot," the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions, and if there is a reasonable belief that the individual the officer is investigating is "armed and presently dangerous," the officer may conduct a pat-down search to determine whether the suspect is in fact carrying a weapon).

Certainly the underlying policy of protecting police officers that animates the Long decision applies equally here. The record reveals that Officer Dolock's investigation regarding Santos' possible intoxication was not complete when she placed him in the cruiser. Indeed, she testified that she informed him that he was not under arrest at that time. After Officer Dolock conducted her search of the vehicle and secured the revolver, she removed Santos from the cruiser so that she could continue her investigation of his potential intoxication by administering field sobriety tests. Had Officer Dolock continued her investigation without checking the interior of his vehicle for weapons, the potential existed that Santos could break away from her control and gain access to the revolver secreted in his vehicle. See Long, 463 U.S. at 1051-52 (search of passenger compartment for weapons authorized, because Terry suspect may break away from police control and retrieve weapon from automobile); Milette, 727 A.2d at 1239. In addition to the danger that Santos might break away before the conclusion of the field sobriety tests, there was also a possibility that Santos would return to his vehicle and secure the revolver if Officer Dolock elected to release him after administering the tests to him. See Long, 463 U.S. at 1051-52 (when a police officer compels the exit of an individual from a vehicle in order to conduct a Terry frisk, the officer remains vulnerable to the possibility that the individual, if not arrested, will be free to retrieve any weapons within his car); Milette, 727 A.2d at 1239. Accordingly, we hold that the search of Santos' vehicle was constitutional as a protective search for weapons.

In the alternative, Santos argues that when he was handcuffed and placed in the back of Officer Dolock's cruiser, the investigatory stop was transformed into a de facto arrest, which required probable cause. However, "[s]tanding alone, 'the use of handcuffs does not necessarily turn an encounter into an arrest for which probable cause is required.'" State v. Apalakis, 797 A.2d 440, 445-46 (R.I. 2002) (quoting United States v. Fountain, 2 F.3d 656, 666 (6th Cir. 1993)). Even though the standard for distinguishing between an investigative detention and an arrest is not always clear because both constitute seizures, see State v. Bennett, 430 A.2d 424, 427 (R.I. 1981) (explaining that a police officer has "seized" a person when he restrains that person's freedom to walk away), whether a detention is an investigative detention or an actual arrest depends on the reasonableness of the intrusion under all of the facts. See Apalakis, 797 A.2d at 446. During an investigative detention, an officer may employ the force reasonably necessary to effect the goal of the detention, which could include investigation, maintenance of the status quo, and officer safety. See United States v. Sokolow, 490 U.S. 1, 11 (1989); Terry, 392 U.S. at 18-19 (investigative detention must be reasonably related in scope both in terms of the force used and the duration); see Apalakis, 797 A.2d at 446. If the force employed exceeds what is reasonably necessary to effect the goal of the stop, such force may transform an investigative detention into a full-blown arrest. See Apalakis, 797 A.2d at 446.

In this case, we are of the opinion that Santos was neither under arrest when he was placed in the police cruiser, nor was his detention a ruse to justify a search of his car. The preliminary factors giving rise to Officer Dolock's suspicion that Santos was intoxicated—a strong odor of alcohol, a sway while standing, and bloodshot, watery eyes—led her to believe that further investigation was warranted. However, as Officer Dolock testified, she was concerned with her safety given the circumstances, which included that it was 8:30 p.m., she was

alone, Santos exhibited suspicious behavior, including furtive movement and avoidance of eye contact, Officer Dolock observed bullets, and Officer Dolock discovered a knife during a cursory pat-down of Santos, thus revealing that he was not truthful in response to her initial questioning about whether he had any weapons. In order to safely continue her investigation, Officer Dolock secured Santos to the extent that was reasonably necessary under the circumstances. Further, her detention of Santos was only long enough for her to conduct the search of Santos' vehicle. See Apalakis, 797 A.2d at 446. Accordingly, we conclude that, under the circumstances of this case, Santos was subjected to an investigative detention, not an arrest, at the time Officer Dolock searched his vehicle.

Finally, Santos argues that Officer Dolock had probable cause to arrest him for driving under the influence at the time she conducted her search, and the fact that she conducted a Terry search instead of placing him under arrest suggests improper manipulation of the circumstances by Officer Dolock in an attempt to justify the search. Santos insists that a finding by this Court that her search was permissible would promote a perverse incentive for police officers to delay an arrest in order to conduct a search of the passenger compartment that would otherwise be disallowed by Gant, 556 U.S. at 351.[6] However, based on the totality of the circumstances, the record certainly suggests that Officer Dolock acted reasonably, and did not deliberately wait to arrest Santos, thereby manufacturing an artifice by which she could conduct a search of his vehicle. It is clear to us, as Officer Dolock herself testified, that her main concern was her own

---

[6] In Arizona v. Gant, 556 U.S. 332, 351 (2009), the United States Supreme Court held:
> "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."

protection while she investigated her suspicion that Santos was intoxicated. As discussed above, Officer Dolock's objectively reasonable safety concerns justified her protective search of the area near the passenger seat. Accordingly, we hold that the search of the vehicle was constitutionally valid, and we affirm the decision of the trial justice denying Santos' motion to suppress.[7]

## B
## Acquittal

Turning to Santos' second argument—that the trial justice should have dismissed the charge under § 11-47-8(a) because there was on insufficient evidence that Santos owned the vehicle and the revolver—we are satisfied that ample evidence was introduced to persuade a fact finder that Santos knowingly possessed the revolver and intentionally exercised control over it.

Under Rule 29, "[t]he court * * * shall order the entry of judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * *." In this case, Santos was convicted under § 11-47-8(a), and the state had "the burden of proving 'every element necessary to constitute the crime charged beyond a reasonable doubt.'" State v. Davis, 877 A.2d 642, 648 (R.I. 2005) (quoting State v. Hazard, 745 A.2d 748, 751 (R.I. 2000)). Thus, the state was required "to establish that [Santos] possessed * * * a revolver and that he did not have a license or permit as required by law." State v. Huy, 960 A.2d 550, 555 (R.I. 2008). An essential element to convict under § 11-47-8(a) is conscious carrying: there must be proof that the defendant had "[k]nowing or conscious contact with an item" to constitute possession. State v. Benevides, 425 A.2d 77, 80 (R.I. 1981). Further, we have recognized that possession can be constructive, which requires the state to "prove that a defendant had knowledge of the presence

---

[7] Given our disposition that the search was reasonable under Michigan v. Long, 463 U.S. 1032 (1983), we do not express any opinion on the parties' arguments concerning inevitable discovery pursuant to an inventory search, search incident to arrest, or the automobile exception.

of the contraband and the intent to exercise control over the weapon." State v. Arenas, 800 A.2d 432, 434 (R.I. 2002) (mem.). Knowledge of the contraband and intent to exercise control "can be inferred from a totality of the circumstances," State v. Santiago, 799 A.2d 285, 287 (R.I. 2002) (quoting In re Vannarith D., 731 A.2d 685, 689 (R.I. 1999)), and typically that knowledge and intent are established by circumstantial evidence and logical inferences. See, e.g., State v. Hernandez, 641 A.2d 62, 71 (R.I. 1994); State v. Mercado, 635 A.2d 260, 263-64 (R.I. 1993).

Viewing the evidence "in the light most favorable to the state" and "giving full credibility to the state's witnesses," State v. Heredia, 10 A.3d 443, 446 (R.I. 2010) (quoting State v. Rodriguez, 996 A.2d 145, 148 (R.I. 2010)), we conclude that there was sufficient evidence to prove beyond a reasonable doubt that Santos "inten[ded] control of the designated object with knowledge of its nature." Benevides, 425 A.2d at 79; see also § 11-47-8(a). In this case, the revolver was found within reaching distance of Santos and in a vehicle he was operating. Further, Santos had actually moved toward the area where the revolver was ultimately discovered. Because we recognize that "knowledge of the existence and location of the contraband can be inferred from [the] defendant's conduct in reaching toward the area where the contraband was located," and that "knowing possession also can be presumed when the contraband is found in the vehicle defendant is operating," we hold that there was sufficient evidence to uphold Santos' conviction under § 11-47-8(a). Santiago, 799 A.2d at 288. Accordingly, the trial justice did not err when he denied Santos' motion for a judgment of acquittal.

**Conclusion**

For the reasons articulated in this opinion, we affirm the judgment below. The papers in this case may be remanded to the Superior Court.



**TITLE OF CASE:**      State v. Gary Santos.

**CASE NO:**      No. 2011-153-C.A.
(W2/10-260A)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      April 29, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**      Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Edwin J. Gale

**ATTORNEYS ON APPEAL:**

For State:  Lauren S. Zurier
Department of Attorney General

For Defendant:  Kara J. Maguire
Office of the Public Defender