386 A.2d 1094.

STATE *v.* ZACHARY S. SPRATT.

MAY 19, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J.   On March 11, 1976, the defendant, Zachary S. Spratt, pleaded nolo contendere in the Superior Court to

an indictment charging him with breaking and entering with intent to commit larceny. He received a 2-year suspended sentence and was placed on probation for 2 years. About 9 months later he rang the doorbell of a residence at which the police had just made a narcotics arrest. A police officer opened the door and ordered Spratt to enter. He was then searched and a revolver was found in his pocket. As a result he was presented to the Superior Court as an alleged violator of his probation and, in addition, an information was filed charging him with carrying a pistol without a license. The information was later dismissed because the firearm was admittedly the product of an illegal search, but the trial justice who granted that dismissal refused to apply the exclusionary rule at the violation hearing and Spratt was violated. He appealed.

The question is whether evidence obtained as the result of an illegal search and seizure may be used at a probation revocation hearing. Although we have not heretofore passed upon that question, courts elsewhere, without distinguishing between parole and probation revocation hearings, have almost unanimously ruled the evidence admissible. *United States* v. *Vandemark*, 522 F. 2d 1019 (9th Cir. 1975); *United States* v. *Farmer*, 512 F.2d 160 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S. Ct. 397, 46 L. Ed. 2d 305 (1975); *United States ex rel. Sperling* v. *Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970); *In re Martinez*, 1 Cal. 3d 641, 463 P.2d 734, 83 Cal. Rptr. 382, *cert. denied*. 400 U.S. 851, 91 S. Ct. 71, 27 L. Ed. 2d 88 (1970); *People* v. *Atencio*, 186 Colo. 76, 525 P.2d 461 (1974); *People* v. *Dowery*, 20 Ill. App. 3d 738, 312 N.E. 2d 682 (1974); *Dulin* v. *State*, 169 Ind. 211, 346 N.E.2d 746 (1976); *State* v. *Caron*, 334 A.2d 495 (Me. 1975); *State* v. *Kuhn*, 7 Wash. App. 190, 499 P.2d 49 (1972).

At the root of most of these decisions[1] is the accepted constitutional tenet that the exclusionary rule proscribing the

---

[1]Some decisions, however, place heavy reliance upon the distinction which the Supreme Court in *Gagnon* v. *Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) and *Morrissey* v. *Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484

admission of concededly relevant and reliable evidence is designed not to "redress the injury to the privacy of the search victim," *United States* v. *Calandra,* 414 U.S. 338, 347, 94 S. Ct. 613, 619, 38 L. Ed. 2d 561, 571 (1974); *see Linkletter* v. *Walker,* 381 U.S. 618, 637, 85 S. Ct. 1731, 1742, 14 L. Ed. 2d 601, 613 (1965); Amsterdam, *Search, Seizure, and Section 2255: A Comment,* 112 U. Pa. L. Rev. 378, 388-89 (1964), but to deter unconstitutional methods of law enforcement. *United States* v. *Janis,* 428 U.S. 433, 446-47, 96 S. Ct. 3021, 3028-29, 49 L. Ed. 2d 1046, 1056 (1976); *United States* v. *Calandra,* 414 U.S. at 347, 94 S. Ct. at 619-20, 38 L. Ed. 2d at 571; *Elkins* v. *United States,* 364 U.S. 206, 217, 80 S. Ct. 1437, 1444, 4 L. Ed. 2d 1669, 1677 (1960).

With this principle as their starting point, the decisions first consider whether any increased deterrence of future police misconduct would result from extending the rule and then balance that incremental increase against the risks to society that extension is likely to produce. *United States* v. *Winsett,* 518 F.2d 51, 53-54 (9th Cir. 1975); *see Stone* v. *Powell,* 428 U.S. 465, 487-88, 96 S. Ct. 3037, 3048, 49 L. Ed. 2d 1067, 1084 (1976)(federal habeas corpus proceedings); *United States* v. *Calandra,* 414 U.S. at 349, 94 S. Ct. at 620, 38 L. Ed. 2d at 572 (grand jury hearing); *cf. Walder* v. *United States,* 347 U.S. 62, 65, 74 S. Ct. 354, 356, 98 L. Ed. 503, 507 (1954)(impeachment of defendant).

Application of this balancing approach has invariably resulted in refusal to extend the exclusionary rule to probation revocation proceedings. On the one hand, the decisions have stressed that it would be unrealistic to believe that a police officer will be further deterred from engaging in an unlawful search by the knowledge that his conduct will render the illegally obtained evidence inadmissible not only

---

(1972) drew between a formal criminal prosecution and a probation/parole revocation hearing. *United States* v. *Farmer,* 512 F.2d 160 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S. Ct. 397, 46 L. Ed. 2d 305 (1975); *Dulin* v. *State,* 169 Ind. 211, 346 N.E.2d 746 (1976).

at a criminal trial but also at a revocation hearing. *United States* v. *Winsett,* 518 F.2d at 54; *In re Martinez, 1 Cal. 3d at 649-50, 463 P.2d at 740, 83 Cal. Rptr. at 388; People* v. *Dowery,* 20 Ill. App. 3d at 741, 312 N.E.2d at 685.[2]

On the other hand these decisions have also stressed that extension of the exclusionary rule to probation revocation proceedings would adversely affect the rehabilitative purposes underlying the probation system by permitting a convicted offender under a probationary sentence to remain at large even though his continued antisocial conduct demonstrates either that he has not yet been rehabilitated or that he is incapable of integration into a law-abiding society.

We agree that the potential benefit to society from refusing to extend the exclusionary rule to revocation hearings outweighs any harm resulting from that refusal. This agreement, however, may not ultimately be dispositive, for the further question remains whether use of illegally procured evidence at a revocation hearing is barred by G.L. 1956 (1969 Reenactment) §9-19-25,[3] our statutory exclusionary rule.

That enactment yields no plain answer to that question, and nothing contained therein or in any related enactment even hints at whether the Legislature, in enacting an exclusionary rule that is applicable "[i]n the *trial* of any action in

---

[2]These decisions, however, do not go so far as to say that an extension of the exclusionary rule would not deter police from searches which are consciously directed toward or intended to harass probationers, *United States* v. *Winsett,* 518 F.2d 51, 54 (9th Cir. 1975), or which shock the conscience of the court, *People* v. *Atencio,* 186 Colo. 76, 80, 525 P.2d 461, 463 (1974). But since the search in this case was not so directed or intended, we leave to a future day consideration of the effect of that kind of conduct on the applicability of the exclusionary rule. *See United States ex rel. Sperling* v. *Fitzpatrick,* 426 F.2d 1161, 1164 (2d Cir. 1970).

[3]General Laws 1956 (1969 Reenactment) §9-19-25 reads:

"In the trial of any action in any court of this state, no evidence shall be admissible where the same shall have been procured by, through or in consequence of any illegal search and seizure as prohibited in section 6 of article 1 of the constitution of the state of Rhode Island.

any court of this state," (emphasis added) intended to include revocation hearings. Neither is there any legislative history or other record of the considerations leading to its adoption which might aid in the interpretative function.

Thus, while the Legislature may have been motivated by diverse purposes when it enacted §9-19-25, the only clue to those intentions is the knowledge that the statute is undoubtedly a response to our decision in *State* v. *Olynik*, 83 R.I. 31, 113 A.2d 123 (1955). In the circumstances, the legislative purpose can be reasonably construed as intending to supply a rule of evidence that would make inadmissible that which this court had held admissible in *Olynik, see State* v. *Davis*, 105 R.I. 247, 252, 251 A.2d 394, 397 (1969); *State* v. *Dufour*, 99 R.I. 120, 136-37, 206 A.2d 82, 91 (1965)(Joslin, J., concurring), thereby negating our refusal to apply the exclusionary rule at a formal criminal trial at which guilt or innocence was to be adjudicated. In our judgment the legislative intention was limited to the accomplishment of that purpose, and we refuse to impute an intention to expand the rule beyond that point. If our reading of the legislative purpose is inaccurate, the enactment of §9-19-25 in response to *Olynik* makes clear that the Legislature knows how to set the matter straight.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the Superior Court.

*Julius C. Michaelson*, Attorney General, *E. Martin Stutchfield*, Special Assistant Attorney General, for plaintiff.

*Walter R. Stone*, for defendant.