STATE

v.

Gustavo SALDARRIAGA.

No. 97–626–C.A.

Supreme Court of Rhode Island.

Nov. 20, 1998.

---

1. Rule 66 of the Iowa Rules of Civil Procedure was redesignated as part of Rule 88, effective

January 24, 1998.

842

Andrea J. Mendes, Jane M. McSoley, Aaron L. Weisman, Providence, for plaintiff.

John H. Ruginski, Jr., Providence, for defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the court for oral argument on October 7, 1998, pursuant to an order directing both parties to appear in order to show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and that the issues raised by this appeal should be decided at this time.

The state has appealed from an order of the Superior Court granting defendant Gustavo Saldarriaga's (defendant) motion to suppress evidence. The defendant was charged with possession of a controlled substance with intent to deliver, in violation of G.L.1956 § 21-28-4.01(A)(2)(a).

On November 19, 1996, Detective Sergeant Lynch (Lynch), of the Rhode Island State Police Violent Fugitive Task Force, received a "tip" concerning the whereabouts of Frank Amato (Amato), a suspect wanted for alleged first degree sexual assault. Previously, a Providence police bulletin had informed Lynch that Amato, a white male with dark skin, 5'9" tall and weighing 150 pounds, probably would refuse to be taken into custody. Lynch, who had been given a photograph of Amato, testified that on the basis of the

information he had received, he believed Amato to be armed and dangerous. On the basis of the information contained in the "tip," Lynch conducted surveillance of a certain public pay telephone station located on Mineral Spring Avenue. While doing so, he observed a person matching Amato's description use the public telephone. This person, however, was in fact not Amato, but turned out to be the defendant.

At the telephone station the defendant had watched nervously as Lynch approached in his unmarked vehicle. The defendant abruptly turned around to walk in the opposite direction when Lynch came within fifteen feet in front of him. At that point, Lynch exited his vehicle, identified himself, and ordered the defendant to raise his hands. At that time, the defendant began to run, Lynch grabbed him by the back of his jacket, made him turn around, and told him to put his hands in the air. Fearing that the person was Amato and was armed, Lynch then performed a quick pat-down search.

As he ran his hands down the outside of the defendant's clothing, Lynch felt a hard lump that was approximately two inches in diameter. Lynch testified that he thought it may have been the butt of a gun. Lynch then reached into the defendant's pocket to pull out the object and felt a piece of aluminum foil with some plastic protruding from it. Based upon his experience as a police officer, upon touching the object, he knew that the object was not a firearm but immediately determined that it was probably contraband by the way it was packaged. Lynch testified that the entire transaction took place in a matter of seconds and that he at no time manipulated the object before retrieving it. After seizing the packet, Lynch placed the defendant under arrest. At that point, Lynch discovered that the arrestee was not Frank Amato, but was Gustavo Saldarriaga who closely resembled Amato. A toxicology report later revealed that the packet contained cocaine.

█ The trial justice, upon completing the suppression hearing, initially determined that Lynch had been completely truthful in every respect. He found that the officer had formed a sufficient reasonable suspicion to justify stopping the defendant at the pay telephone station and conducting the pat-down search. However, in his decision the trial justice later expressed his doubt that an experienced police officer such as Lynch could have mistaken the cocaine packet for a gun. He then found that the seizure of the packet from the defendant's inner pocket exceeded the scope of the pat-down search permitted by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and did not come within the purview of the "plain feel doctrine" as set forth in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In *Dickerson*, the United States Supreme Court expanded *Terry* by stating that:

> "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Dickerson*, 508 U.S. at 375–76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346.

█ On the record before us, we discern more than sufficient evidence under the totality of the circumstances test enunciated in *State v. Tavarez*, 572 A.2d 276, 278 (R.I. 1990), to support the trial justice's finding that detective Lynch's stop and pat-down frisk of the defendant was justified by reasonable and articulable suspicion. *See also State v. Souvanavethi*, 692 A.2d 702, 702–03 (R.I.1997). Our review of the state's appeal, however, does not end with that finding, but extends further into the record because the trial justice refused to accept as credible, Lynch's testimony that, while patting down the defendant, he believed that the two inch aluminum foil wrapped packet he felt and later seized was a gun. That lack of credibility finding serves to vitiate any then valid reason for detective Lynch to have reached in and pulled out the foil-wrapped object as well as the required elements of immediate apparent identity by Lynch of the object as being contraband rather than a gun. *Minne-*

*sota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

In those situations wherein we are called upon to review alleged violations of basic constitutional rights, we use a de novo standard of review. However, in reviewing the credibility finding by the trial justice, we employ the deferential clearly erroneous rule. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *State v. Nardolillo,* 698 A.2d 195 (R.I.1997); *State v. Jenison,* 442 A.2d 866 (R.I.1982). Employing that deferential standard to the record before us, we are hard pressed to second guess and reject the factual credibility finding made by the trial justice. He was there, observing first hand, and listening to the witness. We defer to his on-the-spot evaluation and credibility finding.

For the foregoing reasons, the state's appeal is denied, and the judgment of the Superior Court is affirmed.