STATE

v.

Julius FOSTER.

No. 2000–467–C.A.

Supreme Court of Rhode Island.

Jan. 14, 2004.

Aaron Weisman, Providence, for Plaintiff.

Paula Lynch for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Julius Foster, appeals from a Superior Court conviction for possession of cocaine, following the denial of his motion to suppress. This case came before the Court for oral argument on December 8, 2003, pursuant to an order directing all parties to appear in order to show cause why the issues raised in this appeal should not be summarily decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons stated below, we deny the appeal and affirm the conviction.

At approximately 3:40 p.m. on November 4, 1999, Providence Police Officer Martin Rawnsley was on routine patrol in his cruiser when he noticed a car execute a turn without signaling. Officer Rawnsley stopped the car because of this traffic violation. In addition to the driver, the car carried one passenger seated in the front and a second passenger, the defendant, seated on the passenger's side in the rear. After getting out of his cruiser to speak to the driver, Rawnsley observed the front-seat passenger make "furtive" movements down toward the area of his feet. His suspicions aroused, Officer Rawnsley immediately went over to the passenger side of the car, opened the door, and ordered the passenger to get out. As soon as the passenger exited the vehicle, Officer Rawnsley noticed in plain view a small, clear plastic baggy on the floor where the passenger's left foot had been. He seized the baggy, which he suspected contained cocaine, and arrested the passenger.

While Officer Rawnsley was taking the passenger to a Providence Housing Authority police cruiser that had by then arrived at the scene, he observed defendant, still seated in the rear of the stopped car, also "making some kind of furtive movement in his leg area, sock, knees area." After placing the passenger in the housing police cruiser, Officer Rawnsley returned to the stopped car and ordered defendant to get out. He conducted a "quick pat down" search of defendant, which revealed nothing. He then placed defendant into the rear of his cruiser. Officer Rawnsley testified at the suppression hearing that defendant had no choice but to get into the cruiser. He also testified that once defendant was placed in the cruiser, he was "locked in" because the rear doors of the cruiser do not open from the inside. After putting him in the cruiser, Officer Rawnsley went back to the car and searched for contraband and weapons in the area where defendant had been sitting. This inspection, however, also revealed nothing.

Officer Rawnsley returned to his cruiser, with defendant now seated in the rear. He wrote traffic summonses for the operator of the car and ran warrant checks on all three of the car's occupants, which proved negative. He then released defendant from his cruiser. After doing so, he checked the rear seat of the cruiser where defendant had just been and found six packets containing what he suspected to be cocaine.[1] Officer Rawnsley seized these packets and placed defendant under arrest. The contents of the packets later tested positive for cocaine. The defendant was subsequently charged with cocaine possession, in violation of G.L.1956 § 21-28-4.01(c)(1).

On July 25, 2000, defendant filed a motion to suppress the evidence seized by Officer Rawnsley on the grounds that it was obtained in violation of his constitutional rights, specifically the prohibition against unlawful searches and seizures. On August 1, 2000, defendant's motion was heard. The trial justice determined that defendant did not have standing to challenge the search because he did not have a reasonable expectation of privacy while detained in the cruiser. Therefore, the trial justice denied the motion.

On August 2, 2000, defendant waived his right to a jury, and a bench trial proceeded and concluded that same day. The trial justice determined that defendant's furtive movements while the front-seat passenger was being placed in the housing unit's cruiser were sufficient to have raised a suspicion about defendant's activities to a level that justified the officer's return to the car and removal of defendant. At the conclusion of the trial, the trial justice also found that the state had satisfied its burden that defendant unlawfully possessed cocaine. Accordingly, defendant was found guilty and sentenced to two years of probation.[2]

On August 9, 2000, defendant filed an appeal of his conviction. On appeal, the defendant argues that the trial justice erred in ruling that because defendant did not have an expectation of privacy in the rear of the police cruiser, he did not have standing to suppress the fruits of the search. The defendant contends that the issue is not whether he had an expectation of privacy with respect to the search, but whether he was seized illegally in violation of the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution. He maintains that after the pat-down search of his person disclosed neither weapons nor contraband, any further search, including the seizure of his person, was constitutionally prohibited.

The state responds that it was constitutionally reasonable for the officer to detain defendant in his cruiser temporarily while the car was examined to ensure that it did not contain any weapons. The state contends that the officer's actions were not constitutionally defective in that the packets of cocaine that defendant subsequently abandoned in the cruiser were not the product of an unlawful search.

■■■ This Court reviews *de novo* alleged violations of constitutional rights. *State v. Keohane*, 814 A.2d 327, 329 (R.I.

---

1. At trial, Officer Rawnsley testified that he had checked the rear seat of his cruiser at the start of his shift at 3 p.m. He also testified that no one else had been in the rear of the cruiser from the time when he checked that area at the start of his shift to the time when he placed defendant there.

2. Although defendant's term of probation has already expired, he presses this appeal in order to take issue with the lower court's denial of his motion to suppress.

2003) (per curiam) (citing *State v. Saldarriaga*, 721 A.2d 841, 844 (R.I.1998)). We also review *de novo* "a trial justice's determination of the existence or nonexistence of probable cause or reasonable suspicion." *Id.* at 329–30 (quoting *State v. Abdullah,* 730 A.2d 1074, 1076 (R.I.1999)). However, "[i]n reviewing a trial justice's decision on a motion to suppress, we give deference to the findings of the trial justice and shall not overturn his findings unless they are clearly erroneous." *Id.* at 330 (quoting *In re John N.,* 463 A.2d 174, 176 (R.I.1983)).

■ Before determining whether the trial justice erred in denying defendant's motion to suppress the evidence as the product of an unlawful search, we first must determine whether the police officer unlawfully detained defendant. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, guarantees a person's right to be secure against unreasonable searches and seizures.[3] Whenever a police officer detains a person, "even if briefly, the Fourth Amendment is implicated and the detention must [conform] with the strictures of that amendment." *State v. Bjerke,* 697 A.2d 1069, 1071 (R.I.1997). A police officer has "seized" a person, within the meaning of the Fourth Amendment, when he restrains that person's freedom to walk away. *State v. Bennett,* 430 A.2d 424, 427 (R.I.1981) (citing *State v. Belcourt,* 425 A.2d 1224, 1227 (R.I.1981)); *see also Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stating that a seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen").

■ It is undisputed that after Officer Rawnsley put defendant in his cruiser, defendant was not free to leave. Officer Rawnsley himself testified that defendant had no choice but to get into the cruiser and that, once there, he was "locked in." Although not formally under arrest at that time, defendant was nonetheless "seized" for Fourth Amendment purposes.

■ Generally, the Fourth Amendment requires that probable cause support such a seizure, even if no formal arrest has been made. *State v. Apalakis,* 797 A.2d 440, 444 (R.I.2002) (citing *Michigan v. Summers,* 452 U.S. 692, 696, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)). The United States Supreme Court, however, has recognized that "some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Summers,* 452 U.S. at 699, 101 S.Ct. 2587. Applying the reasonableness standard embodied in the Fourth Amendment, the Supreme Court has balanced the intrusion on the defendant's privacy with the opposing interests of law enforcement in crime prevention and detection and the police officer's safety. *Id.* at 697–98, 101 S.Ct. 2587 (citing *Dunaway v. New York,* 442 U.S. 200, 209, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).

In *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981),

---

**3.** The Fourth Amendment to the United States Constitution, which is substantively the same as article 1, section 6, of the Rhode Island Constitution, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

the Supreme Court held that in evaluating the constitutionality of a stop, the totality of the circumstances must be taken into account. In determining whether the necessary particularized suspicion existed, the *Cortez* Court set forth two elements that must be utilized:

> "First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions * * * that might well elude an untrained person. * * * Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* at 418, 101 S.Ct. 690.

This Court has adopted the *Cortez* analysis in a number of cases. *See, e.g., Keohane,* 814 A.2d at 330; *State v. Tavarez,* 572 A.2d 276, 278 (R.I.1990); *In re John N.,* 463 A.2d at 177. Additionally, this Court has enumerated factors that contribute to a finding of reasonable suspicion, including "the location in which the conduct occurred, the time at which the incident occurred, the suspicious conduct or unusual appearance of the suspect, and the personal knowledge and experience of the police officer." *Keohane,* 814 A.2d at 330 (quoting *State v. Holdsworth,* 798 A.2d 917, 921 (R.I.2002)).

This Court holds that defendant's seizure was constitutionally permissible. We begin our analysis by noting that defendant's detention in Officer Rawnsley's cruiser was significantly less intrusive than a formal arrest. The defendant was not handcuffed when he was first placed in the cruiser. Officer Rawnsley neither exploit-ed defendant's detention to get him to confess to criminal activity nor prolonged the detention to gain more information. There is no evidence indicating that Officer Rawnsley attempted to question defendant or otherwise elicit a dialogue while the two were together in the cruiser. The only evidence concerning what took place in the cruiser at that time came from Officer Rawnsley, who testified that he simply wrote summonses for the driver and ran warrant checks, which are routine tasks for such a stop.

■ Balancing the concerns for defendant's Fourth Amendment rights with the opposing state interests in crime prevention and detection and the officer's safety, defendant's seizure was reasonable under the circumstances. Officer Rawnsley, a six-and-a-half-year veteran of the Providence Police Department, testified from experience that when a passenger in a stopped car bends over, that passenger is either armed and dangerous or attempting to conceal something. Weapons possession is often an attendant circumstance of narcotics possession, and police officers must be permitted to guard themselves against suspects who might be willing to take extreme measures to avoid arrest. *See Summers,* 452 U.S. at 702, 101 S.Ct. 2587 (the "search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence"); *State v. Souvanavethi,* 692 A.2d 702, 703 (R.I.1997) (mem.) (recognizing a link between dealing narcotics and possessing dangerous weapons). Officer Rawnsley's testimony revealed that he had in the past encountered weapons when searching areas in which suspects had made such furtive movements. Undoubtedly, as Officer Rawnsley himself testified, his main concern besides finding what, if anything, defendant had been attempting to conceal, had to be for his own safety.

Further validating his concerns was the fact that the driver was still within the car, seated next to the area where cocaine had just been found. Removing defendant from the car and then detaining him for a short period were reasonable measures under this potentially dangerous set of circumstances.

Applying the *Cortez* criteria to the facts referred to above, we conclude that defendant's detention was based on a reasonable suspicion that resulted from the events that Officer Rawnsley observed after a routine traffic stop. Under the totality-of-the-circumstances concept, we note that defendant's furtive movements downward, sufficiently detailed at trial, more than warranted Officer Rawnsley to become reasonably suspicious of defendant's behavior. The reasonableness of Officer Rawnsley's suspicions is heightened by the fact that defendant's movements mirrored those made moments earlier by the passenger whom the officer was then in the process of arresting for drug possession. Moreover, by the time defendant was ordered out of the car, he already was associated with someone suspected of drug possession. The presence of cocaine in the car could have led the officer to infer that defendant, too, was involved in drug activity. Based on his experience and training, Officer Rawnsley drew reasonable inferences from the surrounding circumstances, leading him necessarily to detain defendant. The challenged seizure is permissible because it was based on the reasonable suspicions of an experienced police officer who observed and articulated criminal meaning in behavior that might appear wholly innocuous to the untrained eye.

We conclude that Officer Rawnsley's testimony reveals an articulable basis for suspecting criminal activity and that the isolation and detention of the defendant were reasonable under the circumstances. The defendant's detention in the cruiser and the subsequent search of the rear seat of the cruiser were constitutionally proper and justified. The defendant's constitutional rights were not violated.

For the reasons stated above, the defendant's judgment of conviction is affirmed. The papers in this case are remanded to the Superior Court.