### STATE

v.

### Eugene C. TEXTER.

### No. 2004–131–C.A.

Supreme Court of Rhode Island.

April 19, 2006.

Lauren Zurier, Esq., Providence, for Petitioner.

Janice Weisfeld, Esq., Providence, for Respondent.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

At 6:45 a.m. on September 22, 2003, a fourteen-year-old girl (young girl or complainant) was walking to her ninth-grade class at Narragansett High School (high school), when she was accosted by an unidentified assailant. As the young girl walked along a path that extended between the high school soccer field and a wooded area, she was confronted by a heavyset white man with a gray beard. She described him as somewhat taller than five-foot-six, wearing black pants and a hooded black sweatshirt. The man approached her and attempted to show her pictures of naked women. The complainant ignored the man and continued walking toward the high school. The man pursued her and suddenly seized her from behind and threatened, "If you scream I'll

kill you." The man sprayed her eyes and hair with a liquid that smelled like Windex; she later described the spray bottle as a clear bottle with purple spots.

As he dragged the young girl toward the nearby woods, the man groped her breasts and genital area. Struggling mightily, she bit his finger and scratched his hands, at which point the man released her, telling her to "just go." As complainant fled toward school, the man followed her and photographed her, from about an arm's length away, with an "I–Zone" camera.[1] After taking the photograph, the man left the scene on a bicycle.

The complainant arrived at school between 7 and 7:05 a.m., and she stood shaking in a corner of the hallway. A friend of hers, who arrived at the high school about the same time, testified that the young girl was frightened and that her eyes were red and watering. After the complainant described the incident, the friend accompanied her to the office to seek help from the school staff.

Daniel Warner (Warner), an assistant principal at the high school, testified that the complainant was visibly injured and upset when she arrived at his office at 7:15 a.m. The young girl described her attacker and indicated with gestures that he had a goatee and had touched parts of her body. She told Warner that her attacker had fled down South Pier Road, toward Route 1. Warner contacted the Narragansett police and passed along the information he had obtained from the complainant, including a description of the attacker.

Narragansett Police Officer Randy Shields (Officer Shields), who was the designated high school liaison, responded to the high school. After speaking to the

---

1. The camera was described as a "long and skinny" silver camera, which complainant recognized as an "I–Zone" camera because a number of her friends owned similar cameras.

complainant, he transmitted a description of the assailant over his police radio. Shortly thereafter, Det. Kimberly Hill (Det.Hill) observed a man riding a bicycle on Point Judith Road. That man later was identified as defendant, Eugene C. Texter. After she stopped him, additional officers arrived at the scene and removed defendant's bicycle from the roadway. One of the officers asked defendant what was in the baskets on his bicycle, and he replied that the baskets contained "tools." The officer asked defendant whether he could look in the bicycle baskets and defendant agreed. The police found an "I–Zone" silver camera, a heavy black sweatshirt, and a packet of lewd photographs. The complainant testified that these photographs were the same ones that defendant had displayed on the day of the attack.

Officer Shields was notified that Det. Hill had detained a suspect. He drove complainant to the scene of the arrest. Officer Shields testified that, upon observing the suspect, the young girl became tense and physically rigid, and she told Officer Shields that she was not sure whether defendant was the man who attacked her. Officer Shields asked the police officers to hold defendant a bit longer, and drove complainant to a nearby parking lot, where he told her to calm down, that defendant could not hurt her, but that she needed to tell him whether she recognized the man. At that point, the complainant positively identified defendant as the man who assaulted her. The defendant was arrested and charged with second-degree sexual assault and simple assault. He also was suspected of violating the terms and conditions of a previously imposed probationary term for first-degree sexual assault.

The complainant accompanied the police to the path near the soccer field and showed the police officers where the assault had occurred. The police discovered a spray bottle of liquid cleaner, "Simple Green," stuck in the ground and covered with leaves. The young girl could not identify the spray bottle, but she did identify the liquid in the spray bottle by its smell as the liquid defendant had used to spray her.

At the police station, the investigating officers observed scratches on defendant's forearms. The defendant's belongings were searched with his written consent. In his wallet, the police discovered two digital photographs. One photograph was of the high school soccer field and the other was a blurry photograph of a person with long dark hair.

The defendant waived his *Miranda* rights and gave a statement to the police. He claimed that he left his house in Narragansett at 6:45 a.m. to wire his son money from the Western Union counter at Stop & Shop. He said that he did not take the most direct route to the store, along South Pier Road, where the high school was located, because the road was too hard for his bad back, although he conceded that he rode his bicycle on South Pier Road nearly every day. The defendant produced receipts indicating that he withdrew money from the Stop & Shop ATM machine at 7:09 a.m., made the Western Union transfer at 7:18 a.m., and purchased a soda at 7:26 a.m. Officer Shields, who also was a certified police mountain bike operator, testified that he had ridden a bike along the various routes defendant could have taken from the soccer field. He testified that it took him approximately five minutes to get from the crime scene to Stop & Shop.

On September 23, 2003, the state filed a notice pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure, alleging that defendant violated his probation in connection with a prior conviction of

first-degree sexual assault.[2] After a probation violation hearing, the hearing justice declared defendant a probation violator and ordered defendant to serve thirty-nine and a half years. The defendant appealed. Before this Court, defendant argues that the hearing justice committed reversible error by relying on evidence he contends was illegally seized and that the trial justice's findings were arbitrary and capricious. We affirm the judgment of the Superior Court.

## Analysis

The defendant argues that his "continued detention after his initial stop was unlawful, the evidence seized thereafter was illegally obtained, and the [hearing] justice thus erred in relying upon the fruits of an unlawful seizure." The defendant also argues that the hearing justice's "finding that [defendant] was a probation violator was arbitrary and capricious" because the identification evidence "was irreparably mistaken, and given the unlikelihood that [defendant] could have been at the scene of the attack at the time it occurred." Based on these contentions, defendant argues that the finding of violation should be reversed.

■ After a thorough examination of the Superior Court record, we are satisfied that defendant did not challenge the lawfulness of his detention or argue that the evidence was illegally seized. Moreover, defendant explicitly agreed to allow, as full exhibits, the very evidence that he now argues on appeal erroneously was admitted.[3] It is well settled that "[t]his Court will not consider an issue raised on appeal that was not presented to the trial court." *State v. Russell*, 890 A.2d 453, 462 (R.I. 2006). "Although we have recognized a narrow exception to the raise-or-waive rule when 'basic constitutional rights are concerned,' * * * the defendant's assertion does not meet the strict requirements of that exception." *Id.* (quoting *State v. Mastracchio*, 672 A.2d 438, 446 (R.I.1996)).

Even if this argument had been properly raised, in *State v. Spratt*, 120 R.I. 192, 386 A.2d 1094 (1978), this Court explicitly refused to extend the exclusionary rule to probation violation proceedings. In *Spratt*, we held that "the potential benefit to society from refusing to extend the exclusionary rule to revocation hearings outweighs any harm resulting from that refusal." *Id.* at 195, 386 A.2d at 1095–96. We refuse to depart from this long-standing precedent.

■ The defendant also argues that the hearing justice erred by finding that he violated his probation. This Court reviews a hearing justice's decision in a probation-revocation proceeding to determine "whether the hearing justice acted arbitrarily or capriciously in finding a violation." *State v. Sylvia*, 871 A.2d 954, 957 (R.I.2005) (quoting *State v. Rioux*, 708 A.2d 895, 897 (R.I.1998)). The credibility of witnesses and the weight of the evi-

---

**2.** Upon conviction of first-degree sexual assault in 1988, defendant was sentenced to fifty years at the Adult Correctional Institutions; ten years to serve, forty years suspended with probation. In 2002, the defendant violated his probation, and a term of six months to serve was imposed, thus leaving thirty-nine and a half years of the suspended sentence and probation remaining.

**3.** For example, defendant had "[n]o objections for the purposes of this hearing" to admission of the lewd photographs found in his bicycle bags that complainant testified he showed to her on the path on the day of the incident. In addition, defendant did not object for purposes of the hearing to the introduction of the "I–Zone" camera, the photographs discovered in his wallet, the entire bicycle bag, its contents, and the consent form he had signed indicating that the police had his permission to search his bicycle bag.

dence is reserved to the fact-finder and is not the function of this Court. *Id.* at 958.

In *State v. Summerour*, 850 A.2d 948 (R.I.2004), we held that "[t]he only issue at a revocation hearing is whether the defendant has breached a condition of his probation by failing to keep the peace or remain on good behavior." *Id.* at 951 (quoting *State v. Crudup*, 842 A.2d 1069, 1072 (R.I.2004)). The prosecution need establish a violation only by reasonably satisfactory evidence. *Sylvia*, 871 A.2d at 957. In this case, the state has met its burden. The hearing justice considered the evidence and made detailed findings of fact. He noted that complainant's in-court description of her assailant was consistent with what she told Warner twenty minutes after the attack. The hearing justice found the state's witnesses to be highly credible and noted that the physical evidence corroborated the witnesses' testimony. Based on the testimony of Officer Shields that he was able to reach Stop & Shop by bicycle in about five minutes, the hearing justice determined that defendant had "more than ample opportunity to have committed the assault, to brush himself off, [and] to ride to the Stop & Shop area[.]" Thus, the hearing justice hardly acted arbitrarily or capriciously in determining that defendant had been lacking in the good behavior required by his probationary status. It is clear that there was more than sufficient evidence to establish that defendant violated the terms and conditions of his probation.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court and direct that the papers in this case be remanded to the Superior Court.