**Supreme Court**

No. 2013-346-C.A.

(P2/11-2516B)

State                               :

v.                                :

George L. Ditren                    :


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                         :

v.                          :

George L. Ditren              :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  The defendant, George L. Ditren (Ditren or defendant),

appeals from a finding that he violated his probation.  This matter came before the Supreme

Court on September 29, 2015, pursuant to an order directing the parties to appear and show cause

why the issues raised should not be summarily decided.  After hearing the arguments of counsel

and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has

not been shown.  Accordingly, we shall decide the matter at this time without further briefing or

argument.  For the reasons set forth herein, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

On June 19, 2013, at approximately 9:08 p.m., Providence Patrolman Michael Clary

(Officer Clary) stopped a vehicle driven by Michael Clemente (Clemente) for failing to obey a

yield sign while coming onto the Point Street Bridge and for crossing the center line of the road.[1]

The defendant was a passenger in the vehicle, which belonged to Clemente's girlfriend.  Officer

---

[1] Officer Clary also testified that the vehicle was traveling "at a high rate of speed" and "well
over" the twenty-five-mile-per-hour speed limit.

Clary testified that as he approached the vehicle, he noticed defendant was "moving around a lot" and, more specifically, that defendant "made a movement towards the rear driver's side towards the leg compartment" of the vehicle. Concerned for his safety, Officer Clary called for backup, to which Officer Robert Kells (Officer Kells) responded.

Upon Officer Kells's arrival, the two patrolmen approached the vehicle – Officer Clary approached Clemente on the driver's side and Officer Kells approached defendant on the passenger's side. Officer Clary testified that Clemente appeared nervous, was sweating, and avoided eye contact, while Officer Kells testified that defendant also appeared to be nervous and sweating, and his "non-verbal body language" indicated that he was "hiding something." When Officer Kells asked where they were coming from, defendant said that they were coming from his cousin's house on Public Street; but, as Officer Kells noted, the vehicle was traveling in the "totally opposite direction" of Public Street.

Both men were ordered out of the vehicle and were subjected to a Terry[2] pat-down.[3] No weapons were found on either Clemente or defendant. The two were then placed in the back seats of separate patrol cars. Although they were not handcuffed, Officer Clary did testify that the back doors of the patrol cars were locked such that they could not be opened from the inside, so defendant and Clemente were, in effect, unable to get out of the cars. Officer Clary testified that neither Clemente nor defendant was under arrest at this time. A search of the rear driver's side area of the vehicle – the area that Officer Clary observed defendant reaching into – revealed an Apple MacBook laptop and a Sony PlayStation 3 video game console. Officer Kells also observed a maroon pillowcase located underneath the front passenger seat where defendant was sitting.

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).
[3] By this time, three more officers had arrived on scene to provide additional backup.

When asked, Clemente said that the laptop belonged to his cousin, Bernardino, and, at Officer Clary's request, he turned it on. Saved on the desktop of the computer was a résumé with the last name "Calcagni." Officer Kells called the phone number listed on the résumé and spoke to a man who identified himself as Anthony Calcagni, a recent graduate of Brown University. Calcagni verified that he owned the type of laptop and video game console that were found in the vehicle. The officers agreed to meet Calcagni, who had left home sometime around 8:20 that evening, at his apartment on Power Street.

Upon arriving home, Calcagni and the officers noticed that the air-conditioning unit in the bay window of his apartment was pushed inward from the window and onto the floor, presumably from someone breaking in. Officer Clary showed Calcagni the items found in the vehicle, which Calcagni identified as his. Notably, the laptop was inscribed with the last six digits of Calcagni's Brown University student identification number, and he was indeed missing a maroon pillowcase from his bedroom. Clemente and defendant were ultimately transported to the Providence police station.

Detective Charles Boranian (Det. Boranian), who had also responded to the scene earlier, testified that he read defendant his Miranda rights at the police station. Detective Boranian further testified that, while defendant was cooperative at first, he became increasingly less obliging, especially when Det. Boranian asked for his girlfriend's contact information to verify his assertion that he was with her earlier in the evening before "a friend" called him to "go for a ride." A criminal complaint was filed against defendant charging him with burglary.

A combined bail and violation hearing was held in Providence County Superior Court on September 6, 9, and 10, 2013. The hearing justice found that the stop was legal and that defendant lacked standing to challenge the search of the vehicle because he was merely a

passenger in it, neither he nor Clemente owned the vehicle, and he had never driven it or kept any personal property in it. Furthermore, the hearing justice found that, even if defendant did have standing to challenge the search, it was "certainly * * * justified" based on defendant's "so-called furtive movements" and his reaching toward the area behind the driver's seat and under the passenger compartment. This, the hearing justice stated, was "enough to raise a reasonable and articulable suspicion in [Officer] Clary's mind that there may be [weapons] or contraband or evidence of a crime being hidden under the driver's seat and/or under the passenger seat by * * * defendant." This reasonable and articulable suspicion was then "further * * * solidified" by the nervous demeanor and evasiveness exhibited by both Clemente and defendant.

The hearing justice went on to hold that, based on the evidence presented, the items seized from the vehicle were "obvious[ly]" stolen from Calcagni's apartment and that defendant was at the very least in constructive possession of those items. The hearing justice inferred that, based on defendant's furtive movements in the vehicle – specifically those in which he reached toward the rear driver's-side leg compartment and underneath his seat – defendant was "attempting to hide * * * the computer and the PlayStation under the driver's seat and the pillowcase under the front passenger seat." In light of this evidence, the hearing justice was "reasonably satisfied that * * * defendant failed to * * * be of good behavior" and concluded that defendant violated the terms of his probation. The hearing justice removed the suspension from defendant's sentence and ordered him to serve five years in prison. Bail was also set on the burglary complaint.[4]

On September 12, 2013, defendant filed a timely appeal to this Court.

---

[4] To date, no indictment or information charging defendant with burglary or any other crime has been filed.

## II

## Standard of Review

"The sole issue for a hearing justice to consider at a probation violation hearing is whether or not the defendant has breached a condition of his or her probation by failing to keep the peace or remain on good behavior." State v. Delarosa, 39 A.3d 1043, 1049 (R.I. 2012) (quoting State v. English, 21 A.3d 403, 406 (R.I. 2011)). "[T]he state need only show that 'reasonably satisfactory' evidence supports a finding that the defendant has violated his or her probation." Id. (quoting State v. Bouffard, 945 A.2d 305, 310 (R.I. 2008)). "Consequently, the 'reasonably satisfied standard * * * should be applied to whether [the] defendant maintained the conditions of his probation' and not to the issue of the defendant's guilt with respect to the new charges." State v. Pona, 13 A.3d 642, 647 (R.I. 2011) (quoting State v. Sylvia, 871 A.2d 954, 957 (R.I. 2005)); see State v. Santiago, 799 A.2d 285, 288 (R.I. 2002).

"In determining whether or not a defendant has committed a probation violation, the hearing justice is charged with weighing the evidence and assessing the credibility of the witnesses." Pona, 13 A.3d at 647 (quoting State v. Tetreault, 973 A.2d 489, 492 (R.I. 2009)). We "will not 'second-guess' supportable credibility assessments of a hearing justice in a probation-revocation hearing." Id. (quoting State v. Jones, 969 A.2d 676, 679 (R.I. 2009)). Thus, "[o]n appeal from a finding of a probation violation, this Court's review is limited to 'whether the hearing justice acted arbitrarily or capriciously in assessing the credibility of the witnesses or in finding such a violation.'" Tetreault, 973 A.2d at 492 (quoting State v. Christodal, 946 A.2d 811, 816 (R.I. 2008)).

-5-

## III

## Discussion

## A

### Defendant's Standing to Challenge the Search and Seizure

The defendant argues that evidence of the laptop, PlayStation, and maroon pillowcase should have been suppressed because they were obtained from an illegal search and seizure.[5] "[I]n order to successfully invoke the protections of the Fourth Amendment, as a threshold matter, a 'defendant bears the burden of establishing the requisite standing to challenge the legality of the search.'" State v. Patino, 93 A.3d 40, 52 (R.I. 2014), cert. denied, 135 S. Ct. 947 (2015) (quoting State v. Quinlan, 921 A.2d 96, 109 (R.I. 2007)). "A party has standing [to challenge the legality of a search] when he or she is found to have a reasonable expectation of privacy in the area searched or the thing seized." Id. (quoting Quinlan, 921 A.2d at 109).

"The determination of whether there is a reasonable expectation of privacy, and thus standing, is a two-tiered analysis: (1) the defendant must have a 'subjective expectation of privacy,' and (2) the expectation must also be 'one that society accepts as objectively reasonable.'" Quinlan, 921 A.2d at 109 (quoting State v. Bertram, 591 A.2d 14, 19 (R.I. 1991)). We look at several factors, such as "whether the suspect possessed or owned the area searched or the property seized; his or her prior use of the area searched or the property seized; the person's ability to control or exclude others' use of the property; and the person's legitimate presence in the area searched." State v. Casas, 900 A.2d 1120, 1130 (R.I. 2006) (quoting State v. Linde, 876 A.2d 1115, 1127 (R.I. 2005)).

---

[5] As the hearing justice noted, defendant did not contest the legality of the stop below, nor does he contest it on appeal.

-6-

In our opinion, defendant had no reasonable expectation of privacy in Clemente's girlfriend's vehicle or in any of the property seized from it. While he was a legitimate guest in the vehicle, he had no ownership or possessory interest in it, nor does he assert any prior use of the vehicle, nor could he control or exclude others from its use. The same reasoning applies to the items seized from the vehicle – defendant asserts no ownership or lawful possessory interest in any of the property seized, nor does he assert any prior use of the property, nor could he rightfully control or exclude others' use of any of the property.[6] In Quinlan, 921 A.2d at 110, we recognized that the defendant "certainly had no expectation of privacy that society would recognize as objectively reasonable" in a vehicle that he was merely a passenger in, had never driven, or kept any personal property in. Neither does defendant here. As such, he lacks standing to contest the legality of the search of the vehicle.

While we may be able to resolve this matter based on defendant's lack of standing alone, we nevertheless address his remaining arguments on appeal. The defendant challenges the "prolonged and unjustified seizure of his person" and argues that the fruits of such an unjustified seizure should be suppressed. He argues that the seizure continued long after the purpose of the traffic stop had come to a close, which, according to defendant, is when the investigation should have ended. Although defendant was not under arrest, he was clearly seized when he was removed from the vehicle, told not to leave, and was put in the back seat of Officer Kells's police car. While he was not handcuffed, the police car did not have door handles on the inside, so, in effect, defendant was not free to leave the vehicle. See State v. Foster, 842 A.2d 1047, 1050 (R.I. 2004) ("A police officer has 'seized' a person, within the meaning of the Fourth

---

[6] The defendant himself undermines his own standing by asserting that "none of the items [seized] were in the immediate physical possession of [defendant]: it was not his vehicle, he was not driving, it was unknown how long he had been riding in the car, the objects were not on his person, and there was nothing about the objects that connected them to him."

-7-

Amendment, when he restrains that person's freedom to walk away.") (citing State v. Bennett, 430 A.2d 424, 427 (R.I. 1981)).

Indeed, by the time defendant was removed from the vehicle, the investigation into the traffic violations had come to a close. However, the seizure of defendant and Clemente beyond this point was nonetheless warranted "based on a reasonable suspicion that resulted from the events that [Officers Clary and Kells] observed [during and] after a routine traffic stop." Foster, 842 A.2d at 1052. "[T]he Supreme Court held that in evaluating the constitutionality of a stop, the totality of the circumstances must be taken into account." Id. at 1050-51 (citing United States v. Cortez, 449 U.S. 411, 417 (1981)). "Additionally, this Court has enumerated factors that contribute to a finding of reasonable suspicion, including 'the location in which the conduct occurred, the time at which the incident occurred, the suspicious conduct or unusual appearance of the suspect, and the personal knowledge and experience of the police officer.'" Id. at 1051 (quoting State v. Keohane, 814 A.2d 327, 330 (R.I. 2003)).

Here, in view of the totality of the circumstances surrounding defendant's detention, as well as the factors we have explicitly enumerated, Officers Clary and Kells, who were both veteran police officers, had "an articulable basis for suspecting criminal activity and * * * the isolation and detention of * * * defendant [was] reasonable under the circumstances" while they continued their investigation. See Foster, 842 A.2d at 1052. Furthermore, we note that defendant and Clemente were only detained for approximately one hour, and there is no indication that they were mistreated by the police or subjected to improper questioning. See id. at 1051.

# B

## The Exclusionary Rule Does Not Apply to Probation Violation Hearings

Even assuming the police illegally obtained the evidence, the exclusionary rule offers defendant no relief. The exclusionary rule, when applicable, bars the introduction of evidence obtained from illegal searches and seizures. See, e.g., State v. Jennings, 461 A.2d 361, 368 (R.I. 1983). However, "the law is well settled that the exclusionary rule does not apply to probation-violation hearings." State v. Campbell, 833 A.2d 1228, 1232 (R.I. 2003) (citing State v. Spratt, 120 R.I. 192, 194, 386 A.2d 1094, 1095-96 (1978)).

Because a violation hearing is civil in nature, "the defendant is not entitled to 'the full panoply of rights' inherent in a criminal trial." Campbell, 833 A.2d at 1233 (quoting State v. Mendez, 788 A.2d 1145, 1147-48 (R.I. 2002)). This "panoply of rights" includes the exclusionary rule. Indeed, "[i]n Spratt, we held that 'the potential benefit to society from refusing to extend the exclusionary rule to revocation hearings outweighs any harm resulting from that refusal.'" State v. Texter, 896 A.2d 40, 43 (R.I. 2006) (quoting Spratt, 120 R.I. at 195, 386 A.2d at 1095-96).

The defendant argues that the exclusionary rule should have been applied to his probation revocation hearing because his prolonged seizure is sufficient to "shock the conscience of the Court." The defendant cites this language from our decision in Spratt, where we left for a later day the question of whether the exclusionary rule would apply at a probation revocation hearing to evidence derived from "searches which are consciously directed toward or intended to harass probationers * * * or which shock the conscience of the court * * *." Spratt, 120 R.I. at 195 n.2, 386 A.2d at 1095 n.2 (citing United States v. Winsett, 518 F.2d 51, 54 (9th Cir. 1975); People v. Atencio, 525 P.2d 461, 463 (Colo. 1974)). Because there is nothing in the record to suggest that

the officers' conduct shocks the conscience, we see no need to address the question left unanswered in Spratt at this time. Here, Officers Clary and Kells had every reason and duty to investigate the situation beyond the traffic violations and continue to detain defendant (and Clemente) during that time. We are satisfied that their conduct in doing so was proper.

## C

### Constructive Possession

Lastly, defendant argues that there was insufficient evidence presented to the hearing justice to satisfy even the lowered "reasonable satisfaction" standard with respect to the finding that he was in possession of the stolen property found in the vehicle. The hearing justice found that defendant was at least in constructive possession of the laptop, PlayStation, and maroon pillowcase. "To find that a defendant constructively possessed illegal contraband, two elements must be satisfied." Santiago, 799 A.2d at 287 (citing In re Vannarith, 731 A.2d 685, 689 (R.I. 1999)). "First, the defendant must have had knowledge of the presence of the contraband and, second, the defendant must have intended to exercise control over the item[s]." Id. "Both of these factors 'can be inferred from a totality of the circumstances.'" Id. (quoting In re Vannarith, 731 A.2d at 689). Specifically, and most relevant to the instant case, we have said that "knowledge of the existence and location of the contraband can be inferred from [the] defendant's conduct in reaching toward the area where the contraband was located." Id. at 288.

At the probation revocation hearing, the hearing justice "weigh[ed] the evidence and assess[ed] the credibility of the witnesses," including Officers Clary and Kells. Based on that testimony and the totality of the circumstances – including the defendant's furtive movements and noticeably nervous demeanor – the hearing justice could have easily inferred that the defendant had "knowledge of the presence of the contraband" and "intended to exercise control"

-10-

over the contraband by moving it, presumably out of the view of the approaching officers. Accordingly, there was more than enough evidence to meet the lowered "reasonably satisfied standard" with respect to the hearing justice's finding that the defendant, at the very least, constructively possessed the stolen property found in the vehicle. Thus, it cannot be said that the hearing justice acted arbitrarily or capriciously in finding that the defendant violated his probation.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.

# RHODE ISLAND SUPREME COURT CLERK'S OFFICE



## Clerk's Office Order/Opinion Cover Sheet

**TITLE OF CASE:** State v. George L. Ditren

**CASE NO:** No. 2013-346-C.A.
(P2/11-2516B)

**COURT:** Supreme Court

**DATE OPINION FILED:** November 2, 2015

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

For State: Lauren S. Zurier
Department of Attorney General

For Defendant: Kara J. Maguire
Office of the Public Defender